Daugherty *v.* Hershberger, Appellant.

368

Argued September 25, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Bernard F. Quinn,* with him *Quinn, Leemhuis, Plate & Dwyer,* for defendant, appellant.

*Fred B. Sieber* and *John E. Britton,* with them *David S. Gifford* and *Gifford, Graham MacDonald & Illig,* for plaintiff, appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 12, 1956:

This case calls for an interpretation of the language of Section 4 of the "Uniform Contribution Among Tortfeasors Act" of July 19, 1951, P. L. 1130. Section 7 of the Act provides that it "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states that enact it." However, it would seem that the issue here presented is one of first impression generally.

On July 13, 1952, there was a collision at the intersection of two roads in Erie County in which three motor vehicles were involved, one driven by Wilbert Daugherty, one by Earl J. Hershberger, and one by John Mong. Daugherty and his wife and three children who were passengers in his car suffered personal injuries, as did also two other passengers, Carl D. Williams and Gertrude Williams; Carl D. Williams subsequently died and Elaine Catherine Daugherty became the administratrix of his estate.

Daugherty and his six passengers entered into settlement negotiations with John Mong and arrived at compromise settlements of their claims against him. These settlements were approved by the Court of Com-

mon Pleas of Erie County and payments were made thereunder as follows:

| | |
|---|---|
| Wilbert Daugherty | $5,145.23 |
| Wilbert Daugherty, Guardian, for Burdel Daugherty | 425.00 |
| Wilbert Daugherty, Guardian, for Leora Daugherty | 650.00 |
| Wilbert Daugherty, Guardian, for Rodney Daugherty | 1,000.00 |
| Elaine Catherine Daugherty | 779.77 |
| Gertrude Williams | 1,500.00 |
| Elaine Catherine Daugherty, Administratrix of the Estate of Carl D. Williams | 4,000.00 |
| Total | $13,500.00 |

In pursuance of these settlements all the claimants executed releases in favor of Mong in accordance with the 1951 Act. The releases discharged him from any and all liability and provided that the damages recoverable against all other tortfeasors were reduced to the extent of Mong's pro-rata share, which would therefore constitute a 50% reduction thereof. Thereupon three suits were instituted against Hershberger, one by the five Daughertys, one by Gertrude Williams and one by Elaine Catherine Daugherty, Administratrix of the Estate of Carl D. Williams, and in each of these suits Hershberger joined Mong as additional defendant. The cases were consolidated for trial, which resulted in verdicts against both Hershberger and Mong as follows:

| | |
|---|---|
| Wilbert Daugherty | $5,559.49 |
| Wilbert Daugherty, Guardian, for Burdel Daugherty | 500.00 |
| Wilbert Daugherty, Guardian, for Leora Daugherty | 1,000.00 |

Wilbert Daugherty, Guardian,
for Rodney Daugherty 500.00
Elaine Catherine Daugherty 2,000.00
Gertrude Williams 1,161.50
Elaine Catherine Daugherty, Administra-
trix of the Estate of Carl D. Williams 1,000.00

Total $11,720.99

Defendant Hershberger filed motions for a new trial which were subsequently withdrawn; motions for judgments n.o.v., which were refused and are not pressed on this appeal; motions to compel reductions of the verdicts in the cases of Wilbert Daugherty, Wilbert Daugherty, Guardian for Burdel Daugherty, Wilbert Daugherty, Guardian for Leora Daugherty, and Elaine Catherine Daugherty; and motions to compel discharge or satisfaction of the verdicts in the cases of Wilbert Daugherty, Guardian for Rodney Daugherty, Gertrude Williams, and Elaine Catherine Daugherty, Administratrix of the Estate of Carl D. Williams. All these motions were overruled and Hershberger now appeals from that action of the court.

The rival contentions of the parties are these: The plaintiffs claim that, since the releases to Mong provided for a reduction of the damages recoverable against other tortfeasors only to the extent of 50% of such damages, they were entitled to recover from Hershberger one-half of each of the verdicts recovered against him, or a total of $5,860.50, and this wholly irrespective of the amounts of the settlements made by plaintiffs with Mong. The court below adopted this view. Hershberger on the other hand contends that, since Wilbert Daugherty's verdict was for $5,559.49, but he had already received under his settlement with Mong $5,145.23, Hershberger should be held liable to

him only for the difference, namely $414.26, and therefore that the verdict should be reduced to that amount. By the same token, the verdict of Wilbert Daugherty, Guardian for Burdel Daugherty, should be reduced from $500 to $75, being the excess of the verdict over the $425 already paid this plaintiff by Mong. Similarly, the verdict of Wilbert Daugherty, Guardian for Leora Daugherty, should be reduced from $1,000 to $350, being the excess of the verdict over the $650 paid by Mong. Hershberger further claims that since Wilbert Daugherty, Guardian for Rodney Daugherty, received more from Mong than the verdict in his favor, that Gertrude Williams received more from Mong than the verdict in her favor, and that Elaine Catherine Daugherty, Administratrix of the Estate of Carl D. Williams, received more from Mong than the verdict in her favor, these three verdicts should be discharged altogether. In the case, however, of Elaine C. Daugherty, who obtained a verdict of $2,000 but had received from Mong only $779.77, Hershberger admits that he would be liable to her for one-half of the verdict or $1,000 because such half is greater than the consideration received by her for her release of Mong. Accepting these contentions of Hershberger his liability to plaintiffs would then amount only to the sum of $414.26, $75, $350, and $1,000, or a total of $1,839.26, as contrasted with the $5,860.50 claimed by the plaintiffs.

The question arises as to the correct application of Section 4 of the 1951 Act. When properly construed does it provide for a reduction of Hershberger's liability only to the extent of one-half of the verdicts against him as provided in the releases given to Mong, or does it permit of a reduction of each verdict in the amount of the considerations severally paid by Mong

wherever such consideration was greater than a one-half reduction would be? The answer would seem to be clear, because, whatever apparent inequity or injustice might sometimes be entailed as between claimants, the tortfeasor who settles and the tortfeasors who remain liable, by a literal interpretation of the act (and counsel have strenuously argued the pros and cons in that regard), the language of the section would seem to be wholly unambiguous. It is as follows: "A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid." In other words, if the proportion of reduction provided by the release is greater than the amount of the consideration paid for the release, such proportion of reduction prevails, but if, on the other hand, the consideration paid for the release is greater than the proportion of reduction provided by the release, then the amount of the consideration paid for the release prevails.

In Uniform Laws Annotated, Volume 9, p. 162, the Commissioners' note to Section 4 paraphrases its language by stating that "a release of one tortfeasor will benefit the others by reducing the claim against them in the amount of the consideration paid therefor, or in the amount or proportion by which the release provides that the total claim shall be reduced, whichever is larger." While the issue and the decision thereon in *Raughley v. Delaware Coach Co.*, 47 Del. 343, 91 A. 2d 245, are not here in point, it is of some interest to note that in the court's opinion in that case (p. 348,

A. p. 247) it was stated that the effect of the express language of Section 4 of the Uniform Act "upon the injured person's claim against the remaining defendant is to reduce it in an amount at least as great as the consideration paid for the release, and even greater than that figure if it so provides. In this manner, it bars the plaintiff from obtaining a double recovery."

It may be added that the case of *Davis v. Miller*, 385 Pa. 348, 123 A. 2d 422, relied upon by the plaintiffs, has no bearing upon the present issue because, while it was there stated that the claimants could recover from the remaining tortfeasor only the pro rata share provided for in the release, namely, one-half of the amount to which they otherwise would have been entitled, there was no fact stated nor question there involved as to the amount of consideration paid for the release nor had the litigation proceeded to the point of a verdict.

At common law an injured party could have for the same injury but one satisfaction, and the receipt of such satisfaction, as consideration for a release executed by him from a person liable for such injury, necessarily worked a release of all others liable for the same injury even though it was intended, or the release expressly stipulated, that the other wrongdoers should not thereby be released: *Thompson v. Fox*, 326 Pa. 209, 192 A. 107; *Union of Russian Societies of St. Michael & St. George, Inc. v. Koss*, 348 Pa. 574, 36 A. 2d 433; *Girard Trust Corn Exchange Bank v. Reliable Motors, Inc.*, 176 Pa. Superior Ct. 300, 106 A. 2d 670. What the Act of 1951 now does is merely to enable an injured party to settle with one of two or more joint tortfeasors and still, subject to the limitations prescribed in the Act, have recourse to the remaining tortfeasors for additional compensation.

We hold, therefore, that the construction of Section 4 of the Act contended for by the defendant is correct, that he is entitled to a reduction of the verdicts as claimed by him in the cases of Wilbert Daugherty, Wilbert Daugherty, Guardian for Burdel Daugherty, Wilbert Daugherty, Guardian for Leora Daugherty, and Elaine Catherine Daugherty; and for a discharge or satisfaction of the verdicts in the cases of Wilbert Daugherty, Guardian for Rodney Daugherty, Gertrude Williams, and Elaine Catherine Daugherty, Administratrix of the Estate of Carl D. Williams.

The judgments are reversed and the record is remanded with direction to enter judgments in the respective cases in accordance with this opinion.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The issue in this case is not one of mathematics, as might be assumed from a first rapid glance at the Opinions. The question before us on this appeal is a simple one of fundamental fairness, under law, in the disposition of a just claim. As the result of an automobile collision on July 13, 1952, in Erie County, the seven plaintiffs in this case entered a suit in trespass against Earl J. Hershberger who brought John Mong into the litigation as an additional defendant. The jury returned separate verdicts in favor of the individual plaintiffs, and against the two defendants, in the total sum of $11,720.99. Each defendant, under established law which no one disputes, was required to pay one-half of the verdict, or $5,860.44½. It so happened, however, that prior to the filing of the suit against Earl J. Hershberger, John Mong had entered into a settlement with the seven plaintiffs whereby, through the total payment of $13,500 (divided among

the injured persons according to individual loss) Mong was released from all further liability.

Since Mong has already settled with the plaintiffs, he is out of the case. Hershberger still remains in the arena of legal controversy because he refuses to pay the $5,860.44½ arrived at by the jury. He contends that while he is willing to give something to the separate plaintiffs who received less from the jury than the amount paid them by Mong, he (Hershberger) is to be relieved entirely from paying a cent to those individual plaintiffs who, in settling with Mong for Mong's responsibility, accepted amounts which later turned out to be more than the jury awarded them. Hershberger's contention is an astounding one. The Majority's approval of that contention is to me no less astounding.

The Majority has computed the items in which certain plaintiffs received less from Mong than the jury stated they should receive from both defendants, and has concluded, after the computation, that Hershberger should pay to them the total sum of but $1,-839.26. Under this calculation, Hershberger is relieved of the responsibility of paying the difference between $5,860.44½ and $1,839.26, or $4,021.18½. Hershberger, according to the Majority's decision, thus receives a sheer gratuity of $4,021.18. Why?

Hershberger denied all liability, he refused to settle with the plaintiffs, he went to trial, and the jury said he should pay $5,860.44½. The Majority says he is to pay only $1,839.26. I repeat the question: Why?

Another *why* follows: Why should Hershberger be relieved of paying the amount which the jury has decided he should pay for the damage he has done?

Hershberger claims, and the Majority upholds him, that since Mong paid more than he (Mong) was re-

quired to pay (as the jury *later* decided), Hershberger is entitled to benefit from Mong's miscalculation or generousness, whichever term one chooses to use in describing it. Hershberger seeks to benefit from a negotiation in which he played not the slightest part. He wants to travel on a train for which he purchased no ticket, he seeks to mount a horse which he did not feed, he desires to ride on a merry-go-round which, so far as he was concerned, might never have been built.

The Majority says that, according to Section 4 of the "Uniform Contribution Among Tortfeasors Act" of July 19, 1951, Hershberger is entitled to the windfall of $4,021.18. I do not so read the statute. Section 4 is not couched in as clear and unambiguous language as the Majority wants to believe, but there can be no doubt as to the purpose of the Act. Its purpose is to urge the settlement of law suits, the immediate payment of claims, and the reduction to that extent of the filing of new lawsuits. Under the Majority's decision, the exact reverse is apt to follow. In the future when two tortfeasors are involved, each tortfeasor will prefer not to settle because there is always the possibility that if his joint tortfeasor pays more than one-half of the eventual jury's verdict, the non-settling tortfeasor will be relieved of paying a portion or all of his one-half liability. Certainly the Legislature never intended so unwholesome and so unjust a result. The Statutory Construction Act of May 28, 1937, specifically states "That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable". To me it is absurd that a tortfeasor, because of the generosity of another person with whom he is in no way associated except in fault, should by law be excused from paying what a tribunal of law has determined he should pay as a result of his own adjudicated individual wrong.

In disposing of the question involved in this appeal, there is another principle in jurisprudence which should not be ignored, namely, "no person may negligently injure another without being responsible for damages". (*Johnson v. Hetrick*, 300 Pa. 225, 232). To authorize Hershberger to pay less than the jury decided he must pay is to immunize him in a manner that has no justification in precedent or reason.

The settlement entered into between Mong and the plaintiffs was approved by Court order. In paragraph 3 of the Agreed Stipulation of Facts, we find the following: "Pursuant to said Court order, the Daughertys executed pro rata releases in favor of John Mong in accordance with Sections 4 and 5 of the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act, Act of July 19, 1951, P. L. 1130, 12 P.S. 2085 and 2086. Said pro rata releases released only John Mong but reduced the damages recoverable by the Daughertys against all other tortfeasors by the pro rata share of John Mong, which amounted to a fifty (50%) per cent reduction of such damages."

We here see that Hershberger was protected to the maximum extent permissible under the statute. By Mong's voluntary settlement with the plaintiff, Hershberger was assured that under no circumstances would he be called upon to pay more than 50% of the verdict returned against him. But this comforting assurance does not satisfy him. He wants to pay less than one-half, considerably less. But such a presumptuous demand is not only condemned by the law; decency in fair dealings between human beings scorns and reprobates it. Six of the plaintiffs were injured and one plaintiff represents a passenger who was killed, all because of Hershberger's fault (in conjunction with Mong). For Hershberger now to receive a monetary

benefit at the expense of those to whom he brought grief is preposterous to the point almost of incredulity. If there were no other reason in the law for rejecting Hershberger's covetous position, although there is, fair play would require that the litigated $4,021.18½ hanging in the balance should fall into the hands of the victims of the violent invasion of personal rights, not the perpetrator of it.

Mong recognized his fault in the motor collision and promptly liquidated his financial responsibilities in the matter. That he was generous enough to pay the subjects of his negligence more than the jury later awarded them is not something for Hershberger to capitalize on. When an aggrieved person accepts a sum of money in settlement of his claim he always runs the risk of accepting less than a jury might award him. The paying settler, on the other hand, runs the risk of paying more than a jury might require him to pay. But this interplay of chances on the chessboard of the mysterious unknown has nothing to do with a person who does not even sit at the table as a watcher-on. Hershberger is that unconcerned and absent person.

If, as the Majority Opinion holds, the jury's verdict is to decide with unrevocable finality, the amounts to which the plaintiffs are entitled, then none of the plaintiffs should be allowed to retain a higher amount than that awarded by the jury. For instance, Elaine Daugherty, as administratrix of the Estate of Carl D. Williams, was awarded by the jury the amount of $1,000. Mong, however, paid in settlement of his liability under this claim the amount of $4,000. According to the Majority's reasoning, Elaine Daugherty, administratrix, should be required to pay back to Mong the amount of $3,500, since Mong's liability would be only

$500 (one-half of the $1000), and Hershberger's liability would also be only $500. But to require Elaine Daugherty, administratrix, to pay back $3,500 would be an abrogation of contract, which not even a Court can do. Thus, it can be observed what entanglement follows when an attempt is made to interfere with the voluntary acts of individuals who are seeking an adjustment of their own affairs.

No matter from what point of view one considers the question, the reasoning of the Majority is unsupportable. If it be assumed that the jury, instead of finding Hershberger and Mong both guilty of negligence, had concluded that only Hershberger was negligent, still returning a verdict in the sum of $11,720.99, but releasing Mong entirely, would not Hershberger in that event have been required to pay the total amount of $11,720.99, regardless of the fact that Mong had already paid even more than what the verdict called for? Could Hershberger in that event have claimed the benefit of an amount paid by someone who was judicially separated from the entire litigation? Hershberger would probably have claimed such a benefit, but would any Court listen to so fantastic a claim?

If the plaintiffs, in settlement of their claims against Mong, had taken from him only $5,000, instead of $13,550, they would still only be allowed to receive from Hershberger one-half of the verdict of $11,720.99. Could it be pretended in such a case that since the settlement was only for $5,000, Hershberger should not have to pay more than $5,000 since otherwise he would be paying more than the amount Mong had paid? Such an argument on its face would be absurd since Mong was a free agent to settle the claim against him for what amount he chose. But the argument advanced

by Hershberger in this Appeal is no less grotesque than the hypothetical one just expounded.

Therein lies the fallacy of the decision of this Court which places the Mong settlement over the jury's verdict and seeks to make of the two papers a homogeneous document, which, of course, cannot be done. The Mong settlement was purely a voluntary compact between two parties and we have no right to step in between them except to see to it that Hershberger is not called upon to pay more than one-half of the jury's verdict. That has been done. To go further is to intermeddle with the rights of people to settle their own differences.

If what the Majority is holding in this case becomes the law, it will mean that there can be no possible inducement moving the plaintiff toward a settlement. We have here the case where the amount of the jury's verdict is *less* than the settlement. Let us take a case where the jury's verdict *exceeds* the amount of the settlement. Let us suppose a case where the plaintiff settles with one of the tortfeasors in the amount of $10,000, and the jury returns a verdict in the amount of $25,000. In that situation the second tortfeasor would pay one-half of the verdict, or $12,500, which, added to the $10,000 already received would mean that the plaintiff receives a total of $22,500, although the jury has said he is entitled to $25,000. Thus, it develops that if the verdict is for less than the settlement the plaintiff can get no more than the verdict, but if it is for more, he gets less than the verdict. Assuming that both tortfeasors are financially responsible, the plaintiff would use very poor judgment in making a settlement because he can not possibly get more than what the jury will give him eventually, and he takes a chance of getting even less by settling.

The decision of this Court today will not encourage potential litigants to settle their troubles, which was the purpose of the Act of 1951. This decision will, on the contrary, frighten them. Since any pipe of peace they smoke may be shattered in their mouths by a Court's order as this one has done, litigants will have to go into Court, as in the past, hoping for a just reparation and peace of mind amid the worry and torment of the smoke of battle.

I dissent.