# FERNANDO J. MARTINEZ *v.* NANCY LOPEZ ET AL.

[No. 1084, September Term, 1982.]

*Decided April 14, 1983.*

The cause was argued before GILBERT, C. J., and LOWE and LISS, JJ.

*Kenneth Armstrong,* with whom were *Donahue, Ehrmantraut & Montedonico, Chartered* on the brief, for appellant.

*Harlow R. Case,* with whom was *Jack H. Olender* on the brief, for appellees.

Lowe, J., delivered the opinion of the Court.

The appeal before us arose from a medical negligence action in the Circuit Court for Montgomery County brought on behalf of Sandra Lopez (a minor child) by her parents, against Doctor Fernando J. Martinez and the Suburban Hospital. The contention was that during her birth as a result of negligence Sandra was caused permanent, incapacitating brain damage.

Immediately preceding and on the day of the trial, Suburban Hospital settled with appellees Lopez for $725,000, and ultimately obtained a release in compliance with the Uniform Contribution Among Tortfeasors Act, Md. Ann. Code, Art. 50, § 20, in order to relieve itself from contribution to the remaining tortfeasor. Pursuant to that section, appellees (Lopez) had to agree to reduce all recoverable damages against Dr. Martinez, the only remaining tortfeasor, by "the statutory pro rata" share of Suburban.

> § 20
>
> "A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors."

The damages recovered, as evidenced by the verdict, were in the amount of $600,000. Appellant, Dr. Martinez, filed a Motion to Order Application of Credit (motion for judgment n.o.v.). Pursuant to our interpretation of the § 20 language, "statutory pro rata share", in *Lahocki v. Contee Sand & Gravel Co.,* 41 Md. App. 579 (1979), *rev'd on other grounds,* 286 Md. 714 (1980), Judge Calvin Sanders reduced the verdict to $300,000 in which amount judgment was entered despite appellant's contention that § 19 of the Joint Tortfeasors Act absolved him of *any* financial responsibility for his negligence. That section reads as follows:

"A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid."

Dr. Martinez argues that because the language of § 19 provides in pertinent part that the "release . . . reduces the claim against the other tort-feasors in the amount of the consideration paid for the release . . . .", the judgment against him is wiped out by the fact that the verdict is less than the consideration. In fact, he argues that the verdict should first be halved by Suburban's pro rata share (§.20), then measured against the consideration of the release for further reduction thereby.[1] He argues that:

"Applying this formula to the facts of the instant case, we find: a) the consideration paid by Suburban Hospital, a settling joint tortfeasor, was $725,000.00. b) The release [pursuant to § 20] provides that the claim shall be reduced to the extent of the pro-rata share of Suburban Hospital. Since there are two joint tortfeasors, the pro-rata share of each is one half the $600,000.00 judgment. The judgment against Dr. Martinez must be reduced by Suburban Hospital's pro rata share, or $300,000.00.

The amount in a) $725,000.00, is greater than the amount in b) $300,000.00. Pursuant to § 19 of the Act, the judgment must be reduced by the greater of the two. A reduction of $725,000.00 from the amount of the judgment leaves a balance of zero. The judgment has therefore already been paid and satisfied."

---

1. We narrowly missed facing this issue in Victor A. Pyles Co. v. Rehmann, 21 Md. App. 686 (1974), see n. 1 at 687-88.

But that is not what § 19 says, nor is that its purpose.

— the act —

"The primary purpose of the Joint Tortfeasors' Act was to create a right of contribution among joint tortfeasors, which did not exist at common law . . . and to establish a procedure whereby that right might be made effective in practice." *Baltimore Transit Co. v. State,* 183 Md. 674, 679 (1944). The significance, if not singularity, of that purpose is manifested by the proper short title citation, the "Uniform Contribution Among Tort-Feasors Act". Md. Ann. Code, Art. 50, § 23.

In order to carry out that primary purpose (*i.e.,* contribution among tortfeasors), an adjunct such a procedure necessarily effected was the continuing rights of· an injured person who settled with one or more of the joint tortfeasors. An even more difficult goal was to achieve the desired uniformity in a nation in which the underlying negligence laws varied from state to state. The uniform act, for example, was contemplated to apply in those jurisdictions with comparative negligence doctrines, as well as to those with contributory negligence preclusions such as Maryland.

We pointed out in *Lahocki v. Contee Sand & Gravel Co.,* 41 Md. App. at 614-616, *rev'd on other grounds,* 286 Md. 714 (1980), that when the Maryland Legislature enacted its version of the uniform act, it declined to include two optional provisions relating to the pro rata proportion of pecuniary responsibility predicated upon the proportion of fault among the joint tortfeasors. Our perplexity there concerned the term "pro rata" thereby left undefined, as used in § 20 which related to the effect of a release on the right of contribution. We held that § 20 required the injured person to agree in any release of a joint tortfeasor to reduce the recoverable damages of the injured person "in numerical shares or proportions based on the number of tortfeasors." The term "pro rata" had been left intentionally undefined by the Commissioners for Uniform Laws to permit such an interpretation in contributory negligence states, but to .permit a propor-

tion-to-fault interpretation in comparative negligence states. *Lahocki, supra* at 619-621.

Sections 19 and 20 must be read in the context of the purpose of the Act. As pointed out by the Prefatory Note of the Commissioners on Uniform Laws,[2] the focus was to lend judicial aid to "rascals" in adjusting differences among themselves. Recognizing that not all tortfeasors are rascals (even though referred to as wrongdoers) by creating a right of contribution among tortfeasors, the Act was designed to replace the injured person's rights as "lord of his action" in placing his loss where and how (among joint tortfeasors) he saw fit. To accomplish this, the Act attempted to provide for each separate instance which might arise.

After establishing that the right to contribution exists among tortfeasors, § 17 then declares the obvious: that it only applies where one tortfeasor has discharged all or more than his share of a common liability; or, if he settles, he may only seek contribution if he has discharged the liability of the other joint tortfeasor(s).

To assure the adoption of the common-law theory then prevalent in only a few jurisdictions, § 18 expressly provided that the recovery by an injured person of a judgment against one joint tortfeasor would not automatically discharge the others.

> "The recovery of a judgment by the injured person against one joint tort-feasor does not discharge the other joint tort-feasor."

Section 19, however, was intended to *change* the common law view that a release of one joint tortfeasor automatically releases the others. It first provides that:

> "A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; . . . ."

---

2. Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings 1939, 240-242.

Parenthetically we note that at this point we are still dealing
with the contribution rights as between joint tortfeasors.
The remaining portion of § 19 contemplates a release which
does *not* relieve the tortfeasor released by the injured party
from contributing to the tortfeasor against whom judgment
was obtained. Section 19, therefore, goes on to say that such
a release

> " ... reduces the claim against the other
> tort-feasors in the amount of the consideration paid
> for the release, or in any amount or proportion by
> which the release provides that the total claim shall
> be reduced, if greater than the consideration paid."

As indicated by the Comments of the Uniform Commis-
sioners, this portion of § 19 contemplates a "common liabil-
ity"; hence, the use of the term "claim" in reference to what
is to be reduced. When contribution is sought by a judgment
tortfeasor against the released tortfeasor, the latter may
obviously be credited against his pro rata share with that
which he has already paid the injured party before
contributing to the defendant tortfeasor against whom the
whole claim was adjudged. In other words, the intent is to
keep joint tortfeasors in positions of equality in contributing
to the common liability unless a settling tortfeasor has given
consideration for release greater than the common liability.
Upon contribution action between the tortfeasors, the
released tortfeasor whose settlement exceeded the judgment
would simply be credited with at least his pro rata share —
or more.

Section 19 would *not* apply if the released tortfeasor has
complied with the conditions of § 20 in order to release
himself, not only from further claims of the injured person
(which the release effects), but from contribution to another
tortfeasor. To obtain that protection, he must exact from the
injured person an agreement to reduce any subsequent money
judgment for "damages recoverable against all other
tort-feasors" by his pro rata share.

§ 20

"A release by the injured person of one joint
tort-feasor does not relieve him from liability to
make contribution to another joint tort-feasor
unless the release is given before the right of the
other tort-feasor to secure a money judgment for
contribution has accrued, and provides for a reduc-
tion, to the extent of the pro rata share of the
released tort-feasor, of the injured person's damages
recoverable against all other tort-feasors."

Again considering that the purpose of the statute was to
benefit joint tortfeasors only as among themselves, not to the
detriment of the injured person, it is absurd to think that the
Maryland Legislature, or the Uniform Commission,
intended that *both* §§ 19 and 20 would apply against an
injured person, even if the "common liability" of all tort-
feasors was comprehended, considered and adjudicated by
the factfinder. The result would be that the law enacted to
adjust equities among wrongdoers, did so at the expense of
the victims. The contention is absurd and we will not pre-
sume that our Legislature consciously enacts absurdities.
*State v. Fabritz,* 276 Md. 416 (1975). But for the alternative
permitted, section 19 applies only in those cases in which a
joint tortfeasor released from liability to an injured person is
*not* relieved from liability to make contribution. Section 20
applies *only* in those cases where a joint tortfeasor released
from liability to the injured person *is* relieved from liability
to make contribution to another tortfeasor.

— "joint" liability —

The Legislature's use of the term "claim" in § 19, we must
add in this case, was intended generically to comprehend the
total claim for all damages recoverable from all tortfeasors as
more expressly described in § 20. We have admittedly been
guilty of loose language in this regard such as substituting
"verdict" for "claim" in our dicta in *Lahocki, supra* at 620, as
has the Court of Appeals by using the undefined term "judg-

ment"or "recovery" in tangentially referring to the provisions of this section, see *e.g., Cong. Country Club v. B. & O. R. Co.,* 194 Md. 533, 544 (1950); *Swigert v. Welk,* 213 Md. 613, 619 (1957); *Brooks v. Daley,* 242 Md. 185, 193 (1966). But the last of these cases implicitly explains our presuppositions in the use of these terms. In expressing a preference for a court reduction procedure in applying § 19 or § 20, as opposed to permitting a jury to do so by considering the release as evidence where a jury had determined the common liability and common damages, the Court of Appeals prefaced its discussion with the prerequisite that the released joint tortfeasor had been found jointly liable along with the unreleased defendant.

> *"If the jury had found the third-party defendant, Mrs. Schaaf, jointly liable along with the defendant Brooks, then Brooks would have been entitled to a reduction in the amount of the judgment owed Daley equal to the amount of the consideration paid by Mrs. Schaaf to purchase her release.* If the third-party defendant, who purchased the release, was found to be not negligent, as was the situation in this case, then the defendant must pay the entire judgment and is not entitled to any reduction in the verdict. *Swigert v. Welk,* 213 Md. 613, 133 A.2d 428 (1957).
>
> The trial court was correct in ruling at the commencement of the trial that the jury should not have been informed of the settlement. The method of letting the jury apply prior payment in reduction of the verdict against a joint tort-feasor who had not settled with the plaintiff, is far less satisfactory than that of having the court make the necessary reduction at the conclusion of the trial.
>
> The Commissioners' Note to § 4 of the Uniform Contribution Among Tortfeasors Act (§ 19 of the Maryland Act) states that the method of having the trial court reduce the verdict is more desirable than that of delegating this function to a jury. A jury

should not be informed of a settlement since that fact would only tend to mislead them in their deliberations in arriving at a just verdict, and could be construed incorrectly as an admission of liability on the part of the settling third-party defendant. *Martello v. Hawley,* 300 F.2d 721 (D.C. Cir. 1962); *Walton v. Tull,* 234 Ark. 882, 356 S.W.2d 20 (1962)." 242 Md. at 193 (emphasis added).

Unless the record is clear that the factfinder had before it the entire claim consisting of all of the injured person's damages recoverable against all tortfeasors and more importantly unless there is some proof or determination of the liability of the released tortfeasor, a joint tortfeasor defendant is not entitled to the reduction described by § 19 *or* by the reduction required to be agreed upon in the release under § 20. That message is clear in the holding of *Swigert v. Welk, supra* (the inferential dicta to which we were pointed by appellant).

In that case the issue was whether a released alleged-joint-tortfeasor was entitled to summary judgment by virtue of the release. To the contrary, the Court of Appeals held that in order for the remaining defendant to be entitled to the reductions set forth in §§ 19 and 20 of the Joint Tortfeasor's Act, there must be some determination of liability of the released tortfeasor. The Court reasoned that:

"At common law, a release by the injured party of one of several joint tortfeasors released all. The Uniform Act, of course, changed this. But this Court has held both before and since the passage of the Uniform Act that if several persons be involved in an accident and one of those persons, who has been guilty of no negligence, obtains for himself alone a release from the injured party, it does not affect the liability of the others." 213 Md. at 619 (footnotes omitted).

The Court relied upon the Pennsylvania case of *Davis v. Miller,* 123 A.2d 422 (1956), which addressed a similar question. That Court declared that although the remaining defendant cannot recover contribution from the released defendant, (due to the § 20 release) the former had an "extremely valuable right" in retaining the latter in the case, *i.e.,* if the jury should find the released defendant to have been jointly at fault the liability of the unreleased defendant would be "cut in half" ( subject to § 20 pro rata reduction).

Although the Court of Appeals did not tell us how to effect such a determination, it left the procedural routes open to the ingenuity of counsel within the scope of the rules.

> "We conclude that the rule laid down in the *Davis* case is the proper one. It would create a somewhat incongruous procedural situation to have a party to a case completely dismissed and leave the question if his negligence yet to be determined. Of course, as there can be no recovery by the plaintiff or Swigert against him, whether or not Welk wishes to participate actively in the trial is a matter left for his selection. While we know of no statute or rule of court that specifically directs the procedure to be followed by the trial Court in having the question of Welk's negligence determined, it is certain that within the scope of the present rules of court an easy and practical method is afforded." 213 Md. at 622.

As pointed out repeatedly by appellant in the case at bar, the jury did not have before it any of the information relating to Suburban's settlement with appellees. Of more concern, however, neither did the jury appear to have the issue of common liability of the joint tortfeasors. The jury decided only that *Dr. Martinez* had damaged Sandra in the amount of $600,000. The extent of Suburban's damage, or even the fact of Suburban's damages, was not before the jury, and because of the absence of a transcript of the testimony we have no way of knowing whether the damages were rea-

sonable.[3] The jury was instructed to decide only whether *Dr. Martinez* was negligent and whether *his* negligence was the proximate cause of the injuries sustained by the child and her parents. They were never told to decide if Suburban was negligent, only that such holding would not affect Martinez' liability.[4] It seems obvious, however, that if a joint tort-

---

**3.** The instructions were transcribed for appeal, however, none of the testimony, the actual submission of the case to the jury, or the taking of the verdict were in the record.

**4.**

"Now, there has been some testimony in this case about some actions that were taken or failed to be taken by Suburban Hospital. Now, in this case, if you find that Dr. Martinez was negligent and that such negligence was a proximate cause of the plaintiff's injury, and if you also find that the hospital was negligent and that negligence was a proximate cause of the plaintiff's injury, or that the negligence of the hospital operated along with defendant's negligence to cause the plaintiff's injury, this would not affect the liability of this defendant in this case.

So that there may be more than one proximate cause of an injury. But it is your determination to make, in this case, as to whether or not Dr. Martinez was negligent, and if he was, whether that negligence was the proximate cause of the injuries sustained by the plaintiff.

Now, the issue of whether the injuries that the plaintiff suffered were caused by the defendant's negligence is really a question calling for expert testimony, and that is why you have heard so much medical testimony.

And the reason, as I said earlier, is that because it is an issue really which is peculiarly within the knowledge of those involved in the medical profession.

So that the burden is on the plaintiff to establish by qualified testimony, and by preponderance of the evidence that the alleged negligence of Dr. Martinez was the cause of the injury to the plaintiff."

Repeatedly, the court emphasized that the issue was solely Dr. Martinez' negligence and the damage *he* occasioned.

"Now, if after considering what I have just indicated to you, you decide for the plaintiff, then it is your duty and your function to consider the damages to which the plaintiff is entitled. Then, again, the plaintiff has the burden by a preponderance of the evidence again to prove by the evidence every item of damage that is claimed that was caused by the defendant.

* * *

So as explained to you earlier, if you find that the injuries and

feasor exercising his right to contribution under §· 17 (a) must prove the joint liability of the tortfeasor he claims against, after having generally settled with the injured party, see *O'Keefe v. Baltimore Transit Co.,* 201 Md. 345 (1953), a nonsettling tortfeasor should have to prove the liability of a released party whose release he expects to utilize in the nature of a contribution to his benefit.

We should point out that the determination of a joint liability by a judicial factfinder would seem logically a requisite only if the release contains the customary contradiction of denying the liability for which the released tortfeasor is settling. This appears to have been the factual background in *Swigert, supra. Id.* at 618.

In the case at bar, Suburban initially entered into a consent judgment which, if it had not been vacated, would seemingly have been a satisfactory determination of Suburban's joint liability, sufficient at least to satisfy *Swigert.* While it is not necessary for us to decide in this case, an admission of liability in the release would also appear to be an adequate determination of liability to permit an adjudicated tortfeasor to utilize either of the two sections, § 19 or § 20, for a reduction of judgment (depending upon the appropriate release), since the victim against whom the judgment would be reduced has agreed to the acknowledged joint liability. In the release in the case at bar Suburban did not overtly admit its liability in the "mea culpa" sense; it did, however, acknowledge that *for the purposes of the release,* it was to be considered as a joint tortfeasor with Dr. Martinez.

Whether Swigert requires a judicial determination of joint liability in order to invoke the relief permitted under either § 19 or § 20 in face of these facts need not be decided here since, 1) appellees did not contest the reduction under § 20

---

the damages sustained by the plaintiff were caused by the defendant's negligence, then he would be responsible for all of the reasonable damages that flowed as a result of that injury."

by cross-appeal, and 2) it will suffice to decide this case that we hold §§ 19 and 20 to be mutually exclusive.

*Judgment affirmed.*
*Costs to be paid by appellant.*