476 A.2d 197

**Fernando J. MARTINEZ**

v.

**Nancy LOPEZ et al.**

**No. 69, Sept. Term, 1983.**

Court of Appeals of Maryland.

June 11, 1984.

92

H. Kenneth Armstrong, Rockville (Donahue, Ehrmantraut & Montedonico, Chartered, Rockville, on the brief), for appellant.

Amici curiae brief of The Motor Vehicle Manufacturers Association of the United States, Inc. and The Product Liability Advisory Counsel, Inc. filed; Edward S. Digges, Jr., Robert Dale Klein and Michael T. Wharton, Baltimore, on the brief. Of Counsel: William H. Crabtree, Vice-President and General Counsel and Edward P. Good, Senior Atty., Motor Vehicle Manufacturers Association of the United States, Inc., Detroit, Mich., and Piper & Marbury, Baltimore.

Amicus curiae brief of Maryland Trial Lawyers Association filed; Robert R. Michael, Rockville, on the brief.

Harlow R. Case, Washington, D.C. (Jack H. Olender, Washington, D.C., on the brief), for appellees.

Amicus curiae brief of Medical Mutual Liability Insurance Society of Maryland filed; Ward B. Coe, Jr., E. Dale Adkins, III and Anderson, Coe & King, Baltimore, on the brief.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

RODOWSKY, Judge.

■ This case involves the Maryland version of the Uniform Contribution Among Tort-Feasors Act, Md.Code (1957, 1979 Repl.Vol.), Art. 50, §§ 16–24 (the Md. Act). There are

two tort-feasors. One settled before trial under a pro rata release by paying more than double a jointly liable defendant's pro rata share of the total claim as ultimately determined by the jury's verdict. The issue is whether the amount paid by the settling defendant in excess of a pro rata share generally operates to reduce the total claim and, in this case where such a reduction produces a negative number, whether the excess paid operates to satisfy any judgment to be entered for the injured party against the nonsettling tortfeasor. For reasons hereinafter stated we shall hold that the total claim is satisfied. In so holding, we reverse the Court of Special Appeals which had affirmed the Circuit Court for Montgomery County's judgment for a pro rata share. *Martinez v. Lopez*, 54 Md.App. 414, 458 A.2d 1250 (1983).

Sandra Clara Lopez, a minor, and her parents, Nancy and Augustin Lopez (collectively the Plaintiffs), sought damages as compensation for personal injuries and loss allegedly resulting from medical malpractice. Plaintiffs sued Fernando J. Martinez, M.D. (Martinez) and Suburban Hospital (Suburban). On the morning trial commenced Suburban, with court approval, settled with the Plaintiffs for $725,000. These parties agreed in their release that "all claims recoverable by" the Plaintiffs against Martinez "are hereby reduced to the extent of the statutory pro rata share of said Suburban Hospital," under the Md. Act "of all such damages recoverable by [Plaintiffs] on account of said incident ...." The instrument further provided that "for the purposes of the aforegoing Release" Suburban and Martinez "are to be considered as joint tortfeasors within the meaning of the [Md. Act]." Trial proceeded as to Martinez against whom the jury returned a $600,000 verdict.[1] In light of the instructions to the jury, the parties recognize that this verdict represents the full value of the Plaintiffs' claims, without adjustment for the payment by Suburban.

---

**1.** The parties' arguments start from the mutual premise that Suburban is a joint tortfeasor with Martinez.

Martinez moved for an order crediting Suburban's payment against the verdict, the effect of which would be to satisfy any judgment against Martinez. In the view of the trial court Martinez remained liable for a pro rata share of the total claim so that judgment for $300,000 was entered against him.[2] On Martinez's appeal, the Court of Special Appeals affirmed. We issued certiorari in response to a petition by Martinez.

The issue revolves around §§ 19 and 20 of the Md. Act which read:

§ 19. Effect of release on injured person's claim.

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

§ 20. Effect of release on right of contribution.

A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.

Martinez rests his argument on the plain language of the "but" clause of § 19. Plaintiffs, adopting an analysis advanced by the intermediate appellate court, principally contend that §§ 19 and 20 are mutually exclusive because they deal with different types of releases. Section 19 is said to address the release of a joint tortfeasor under which the

---

**2.** No party contends that the pro rata share in this case is determined other than by dividing the amount of the verdict by two.

settling defendant remains liable to make contribution to another joint tortfeasor (non-pro rata release). Section 20 is said to state the rules applicable where the liability of the settling defendant for contribution is extinguished because the releasing plaintiff promised the settling defendant to credit a pro rata share against the total claim (pro rata release). Logic dictates that we initially address the plain language argument.

The issue is the effect which the release given by the Plaintiffs to Suburban has on any judgment to be entered against Martinez. On that issue § 19 is dispositive. It tells us that the Plaintiffs' release of Suburban "reduces the claim against" Martinez. The reduction is

(1) in the amount of the consideration paid for the release, or

(2) if the release provides that the total claim shall be reduced by an amount or proportion, and if that amount or proportion is greater than the consideration paid, then in the amount or proportion provided.

■ Here the consideration paid is $725,000. The release does not specify an amount by which the total claim shall be reduced, (*e.g.*, $1 million reduction for payment of $725,000). It does state the proportion by which the total claim of the Plaintiffs shall be reduced, *i.e.*, by a pro rata share. Under the verdict a pro rata share is $300,000. The consideration paid, $725,000, is greater than the pro rata share, $300,000. Accordingly the Plaintiffs' total claim is reduced by $725,-000. This exceeds the total claim as valued by the jury. Application of the § 19 reduction in this case produces a negative number. Consequently, the trial court should have granted Martinez's motion for the entry of a credit satisfying judgment against him.

This result follows from the explanation of § 19's operation which we gave in *Swigert v. Welk*, 213 Md. 613, 133 A.2d 428 (1957). For purposes of discussion in that opinion we assumed that the two parties to the appeal were joint tortfeasors. Welk had settled with the plaintiff for $3,500

under a pro rata release. The plaintiff sued Swigert who then impleaded Welk. With respect to the effect of the Md. Act on a hypothetical judgment in favor of the plaintiff against the nonsettling tortfeasor we said (*id.* at 619, 133 A.2d at 431):

> In our present case, the provisions of the Uniform Act may vitally affect the amount of any judgment that the plaintiff may recover against Swigert. For instance, if the plaintiff's damages be assessed at $4,000 and if the provision of [present § 19] requiring a reduction in the amount of the consideration paid for the release be applied [*i.e.*, $3,500], the judgment to be entered against Swigert will be $500.

In this illustration the amount paid in settlement exceeds the pro rata share of each joint tortfeasor. The amount by which the release consideration exceeds the pro rata share of the settling defendant is applied to reduce the pro rata share of the nonsettling defendant. The only difference between the illustration in *Swigert* and the case before us is that Suburban's payment is more than twice a pro rata share. But nothing in § 19 or elsewhere in the Md. Act limits applying all of the settlement payment against the plaintiff's claim where the payment is greater than the amount or proportion of reduction specified in the release. The difference between the instant case and the illustration in *Swigert* is of degree but not of principle in the operation of § 19.

The Md. Act was enacted by Ch. 344 of the Acts of 1941 and may be cited as the Uniform Contribution Among Tort-Feasors Act. *See* § 23. With the omission of certain sections not here relevant, the Md. Act is the statute promulgated by the Commissioners on Uniform State Laws in 1939 (the 1939 Model Act). *See* 1939 Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Forty-Ninth Annual Conference 240–252. Section 19 of the Md. Act is § 4 of the 1939 Model Act. Comments of the National Conference upon § 4 advise that its second clause

is included simply to emphasize the fact that a release of one tortfeasor will benefit the others by reducing the claim against them in the amount of the consideration paid therefor, or in the amount or proportion by which the release provides that the total claim shall be reduced, whichever is larger. [*Id.* at 246.]

Seven jurisdictions, in addition to Maryland, have adopted the 1939 Model Act in some form. These are Arkansas, Delaware, Hawaii, New Mexico, Pennsylvania, Rhode Island and South Dakota. *See* 12 U.L.A. 57 (1975 & Supp.1984). "Most of these states have made important changes in the [1939 Model Act] which have defeated the whole idea of uniformity ...." Commissioners' Prefatory Note (1955 Revision), *id.* at 59. However, cases like the present one have arisen in certain of the foregoing states. In each case § 4 of the 1939 Model Act had been adopted in the same form in which it exists as § 19 of the Md. Act. Where the consideration paid for a pro rata release exceeded the total of (1) the pro rata shares by which the release provided that the common liability was to be reduced and (2) the pro rata share of the nonsettling joint tortfeasor, the plaintiff's claim was held to be paid in full. *See Raughley v. Delaware Coach Co.*, 47 Del. 343, 91 A.2d 245 (Super.1952); *Daugherty v. Hershberger*, 386 Pa. 367, 126 A.2d 730 (1956) (as to claims of certain plaintiffs); *cf. Weinstein v. Stryker*, 267 F.Supp. 34 (E.D.Pa.1967). Where the amount paid for a pro rata release by the settling defendant exceeded the party's pro rata share, but did not exceed the total of the shares of all joint tortfeasors, the consideration in excess of the pro rata share also reduced the plaintiff's claim and was in effect credited to the benefit of the nonsettling defendants. *See Garrison v. Navajo Freight Lines, Inc.*, 74 N.M. 238, 392 P.2d 580 (1964); *Daugherty v. Hershberger, supra*, 386 Pa. 367, 126 A.2d 730 (as to certain claims); *Augustine v. Langlais*, 121 R.I. 802, 402 A.2d 1187 (1979).[3] The

---

3. Rhode Island determines the pro rata share of each joint tortfeasor by allocating fault among them. On this basis the nonsettling defend-

holdings in these cases apply the principle illustrated in *Swigert v. Welk, supra.*

For Suburban's payment to satisfy both its and Martinez's pro rata shares of the common liability comports with the analysis of the Md. Act made by the late Wendell D. Allen, Esq. Mr. Allen's study paper, *Joint Tortfeasors; Contribution; Indemnity; Procedure,* which was first read to the Barristers Club of Baltimore on Tuesday, March 30, 1948 and later printed in the Daily Record, June 7, 1948, at 3–5, substantially influenced the practical construction of the Md. Act by the bar and trial courts of this state. In a letter to unnamed attorneys of November 27, 1970, printed in the Daily Record, January 11, 1971, at 6, cols. 1–3, Mr. Allen opined on facts completely analogous to those in the present case that the plaintiff would take nothing against the nonsettling defendant. He did "not see any other rational way in which to apply the language of the [Md. Act]." In his view the doctrine of unjust enrichment governed and had implicitly been applied in the illustration given in *Swigert.*

Plaintiffs are joined by an *amicus,* The Maryland Trial Lawyers' Association, in defense of the construction of the Md. Act by the intermediate appellate court. It is said that the Plaintiffs agreed in their release of Suburban to credit

---

ant in *Augustine* was responsible for only 15% of a judgment, including interest, totalling $42,971.24 in a case where the settling defendant had paid $42,000 for a pro rata release. The $42,000 was credited against the $42,971.24.

*Duncan v. Pennington County Housing Authority,* 283 N.W.2d 546 (S.D.1979) also applies § 4 of the 1939 Model Act, but in a manner substantially different from Maryland law on other aspects of joint tortfeasor releases than are at issue here. The jury verdict valuing the total claim in *Duncan* was reduced by the percentage of fault allocated to certain settling defendants. From a verdict of $215,000 the nonsettling defendant's pro rata share became $16,125 which was less than the $20,000 paid for a pro rata release by another settling defendant whom the jury found not to be liable. Nevertheless, the South Dakota court credited that $20,000 consideration against the $16,125 pro rata share so that the nonsettling defendant had no monetary liability to the plaintiff. *Cf. Swigert v. Welk, supra.*

against the common liability only the pro rata share of Suburban. To credit twice a pro rata share defeats the intention of the parties to the release. This argument ignores that language in § 19 which applies the greater of the consideration paid or the amount or proportion agreed upon to reduce the total claim. The parties to the release cannot by their agreement restrict the benefit which the statute says flows from that release to the nonsettling defendant who is not a party to the agreement.

Ultimately Plaintiffs' statutory construction argument rests on the theory adopted by the Court of Special Appeals in this case. In its *Martinez* the intermediate appellate court drove a wedge of mutual exclusivity between §§ 19 and 20. Section 19 was said to deal with releases which do not protect the releasee from possible contribution to another joint tortfeasor. Section 20 was said to apply where the releasee obtains the reduction of the damages by the pro rata share of the released tortfeasor and is thereby protected from a claim for contribution. But one cannot get to that destination by following the road of the statute's words.

▮▮▮▮ We agree with Martinez and other *amici* that the two sections deal with different aspects of release situations.[4] Section 20 is concerned with the effect of a release on the right of unreleased joint tortfeasors to collect contribution. Where there are two joint tortfeasors and the plaintiff has released one, the latter is not thereby relieved from liability to pay contribution unless the right of the nonsettling defendant to collect contribution has not yet accrued and the settling defendant obtains a release in which the plaintiff agrees to reduce damages against the nonsettling defendant by the pro rata share of the released

---

**4.** Medical Mutual Liability Insurance Society of Maryland, the Motor Vehicle Manufacturers Association of the United States, Inc. and the Product Liability Advisory Counsel, Inc. have filed briefs amici in which they argue contrary to the Court of Special Appeals' construction of the Md. Act.

tortfeasor. Section 19 is concerned with the effect of a release on the injured person's claim. Under the Plaintiffs' theory of mutual exclusivity a release providing for a "pro rata share" reduction, which operates under § 20 to bar contribution, can never be the same release, referred to in § 19, which provides for a reduction in a "proportion." That is not correct.

■ Theoretically the agreement between the plaintiff and the releasee can provide for any effect on the claim which is not illegal. They may agree that the claim is reduced dollar for dollar by the amount of consideration paid for the release, or by a dollar amount greater than, or conceivably even less than, the consideration paid. They may agree that the claim is reduced by some proportion. In cases where the release is given prior to judgment, a proportion is a specified or ultimately determinable percentage of the then unliquidated amount of the total claim. As a result, when, as here, the claim is liquidated by jury verdict the product of the percentage times the verdict may be an amount more than, less than, or the same as the consideration paid for the release and that amount may be more than, less than, or the same as the pro rata share of the released defendant. If the amount provided in the release, or the amount determined by proportion, is the same as the consideration paid for the release, the plaintiff's claim is reduced by that many dollars. If the amount provided in the release, or the amount determined by proportion, exceeds the consideration paid for the release the plaintiff's claim is reduced by the greater amount. If the consideration paid for the release exceeds either the amount provided in the release or the amount determined by proportion, then the plaintiff's claim is reduced by the consideration paid for the release. Significantly, if the release provides that the plaintiff's claim is to be reduced by the pro rata share of the releasee then, when the claim is liquidated, the "proportion" of § 19 and the "pro rata share" of § 20 are an identical amount. Sections 19 and 20 are not mutually exclusive. From the standpoint of the types of releases

to which either section might be applied, § 19 is simply more encompassing than § 20.

■ Other language of § 19 defeats the effort to exclude pro rata releases from its scope. The unarticulated subject of the "but" clause of § 19, which "reduces the claim" is the "release by the injured person of one joint tort-feasor" which is the subject of the first clause of § 19. The release which is the subject of the first clause does not discharge other tortfeasors unless it so provides. That release may or may not be a pro rata release. The Md. Act changes the common law so that no type of release of one joint tort-feasor discharges all. However, under Plaintiffs' construction, the meaning of the subject, "release," in the "but" clause would have to shift from the generic to the specific without any signal in the language to indicate that the meaning in the "but" clause is restricted to non-pro rata releases only.

■ Plaintiffs' construction also ignores the headings of §§ 19 and 20. These section headings form optional provisions of the 1939 Model Act. *See* 1939 Handbook of the National Conference, *supra,* at 246–47. The headings were included as part of the Md. Act in Ch. 344 of the Acts of 1941. Consequently they may be considered. *See Smelser v. Criterion Ins. Co.,* 293 Md. 384, 386–87 n. 2, 390, 444 A.2d 1024, 1026 n. 2, 1028 (1982). These headings confirm the different effects of releases which the two sections address. Furthermore, to read § 19 as limited to non-pro rata releases conflicts with the illustration in *Swigert, supra.* There we said that the release which Welk had obtained "fully complies with [present § 20], and is also within the provisions of [present § 19], if Welk is a tort-feasor." 213 Md. at 618, 133 A.2d at 431. Welk's release could not be within both § 19 and § 20 if those sections are mutually exclusive based on the type of release. So far as counsel have informed us and as our research discloses, no court in any other state which has enacted § 4 of the 1939

Model Act has held that it does not apply if the release is a pro rata release.

Our rejection of the mutual exclusivity construction is consistent with the description of § 19 in the course of promulgation of the 1939 Model Act by the National Conference. Charles O. Gregory, a professor of law at the University of Chicago, was Reporter for the 1939 Model Act. In its first tentative draft §§ 8 and 9 were substantial counterparts of §§ 19 and 20 of the Md. Act. *See* Gregory, *Contribution Among Tortfeasors: A Uniform Practice,* 1938 Wis.L.Rev. 365, 400 app. The Reporter described the subject sections as follows:

MR. GREGORY: Section 8 doesn't necessarily deal with contribution. Section 9 does, and in Section 9 there is a specific provision for the release of all other tortfeasors to the extent of the pro rata share of the released tortfeasor if his release is to protect him from a subsequent action for contribution. Doesn't that fix it up?

MR. RUTLEDGE: I think so.

MR. GREGORY: The reason we had Section 8 may not be too obvious but although it is not meant to affect contribution, at least it does give the other tortfeasors the benefit of any payment which the injured person actually does receive or which he is willing to acknowledge as having received, regardless of the effect the release may have on protecting the particular released person from contribution. Section 8 does not protect him from any such action.[5]

At the heart of the position urged by the Plaintiffs and embraced by the Court of Special Appeals is a policy judgment.

---

5. National Conference of Commissioners on Uniform State Laws, Forty-Eighth Annual Conference, Cleveland, Ohio, July 18–23, 1938, transcript of that part of the proceedings relating to the consideration of the UNIFORM CONTRIBUTION AMONG JOINT TORT–FEASORS ACT, at 33, reproduced as app. 2 to the brief of amici curiae, the Motor Vehicle Manufacturers Association of the United States, Inc. and the Product Liability Advisory Counsel, Inc., in the case at hand.

> Again considering that the purpose of the statute was to benefit joint tortfeasors only as among themselves, not to the detriment of the injured person, it is absurd to think that the Maryland Legislature, or the [Commissioners], intended that *both* §§ 19 and 20 would apply against an injured person, even if the "common liability" of all tortfeasors was comprehended, considered and adjudicated by the factfinder. The result would be that the law enacted to adjust equities among wrongdoers, did so at the expense of the victims. The contention is absurd and we will not presume that our Legislature consciously enacts absurdities. [*Martinez v. Lopez,* 54 Md.App. at 421, 458 A.2d at 1254 (italics in original).]

As we see it the Md. Act, in the particular application under consideration here, adopts the jury verdict as the measuring rod of the Plaintiffs' claim. The $600,000 full value of that claim has been paid by Suburban, with $125,000 to boot. The "expense of the victims" is that their gross recovery is $725,000 rather than $1,025,000. Here the consideration paid by Suburban was more than the total compensation to which Plaintiffs were entitled in the eyes of the jury. We could not in this case denounce § 19 as absurd and proceed to rewrite the statute in the guise of construction, without holding that the use of juries to value personal injury claims is absurd.

Plaintiffs also argue that we should construe the Md. Act in a way which will insure that a plaintiff who settles with one of two joint tortfeasors will always realize from a nonsettling tortfeasor at least a pro rata share based on the verdict. They say that to do otherwise will deter settlement of cases. The National Conference has recognized that the 1939 Model Act does deter settlement, but not for the reason underlying our holding in the present case. The National Conference withdrew the 1939 Model Act in favor of a 1955 version under § 4(b) of which a release of one joint tortfeasor "discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." However, § 4(a) of the 1955 version continues to

provide that the plaintiff's claim is reduced against the other joint tortfeasors "to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater...." *See* 12 U.L.A. 98 (1975). The Commissioners saw the deterrence to settlement resulting from the need for the releasee to have the common liability reduced by a pro rata share while the plaintiff was unwilling to promise a reduction in an undetermined amount. *Id.* at 99.

Part of the philosophy underlying what became § 4 of the 1939 Model Act is described by Professor Gregory in his 1938 Wis.L.Rev. article, at 392. He points out that the provision comparable to the first clause of § 19 of the Md. Act protects the plaintiff's right to sue other tortfeasors from an unintended release effected at common law by a release given to one joint tortfeasor. At the same time the next following clause, "gives the other tortfeasors some advantage in that the common liability against them is lowered by the amount of the consideration paid for the release or by the amount so provided in the terms of the release." It is not our task to decide whether the intended "advantage" to the other tortfeasors is good or bad policy. We hold only that the language of § 19 of the Md. Act cannot be tortured into extinguishing that advantage.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR REMAND TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH INSTRUCTIONS TO ENTER AS "SATISFIED" THE JUDGMENT IN THE PRINCIPAL AMOUNT OF $300,000, TOGETHER WITH INTEREST, AGAINST FERNANDO J. MARTINEZ. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY AUGUSTIN LOPEZ AND NANCY LOPEZ, EACH INDIVIDUALLY AND AS PARENTS AND NEXT FRIENDS OF SANDRA CLARA LOPEZ. COSTS IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY TO BE PAID BY FERNANDO J. MARTINEZ.