## Mummery v. Farley

*Arthur Wolk,* for plaintiff.

*Joel D. Gusky,* for defendant Farley.

*Richard D. Masterson,* for defendant North Penn School District.

BROWN, *J.,* April 18, 1984—On October 24, 1978 Carol Mummery was struck and killed by a motor vehicle as she was walking to a school bus stop. The vehicle was operated by Radcliffe W. Farley and owned by North American Clothing Card Co., Inc. (Farley). Plaintiff, administrator of his daughter's estate, started an action in trespass[1] against Farley and the North Penn School District

---

1. Plaintiff's complaint included a claim for Wrongful Death, 42 Pa. C.S. §8301 and also a claim under the Survival Statute, 42 Pa. C.S. §8302.

(school district). The complaint charged the school district with negligence in fixing the school bus stop for his daughter. Farley was charged with negligence in the operation of his automobile. After some negotiation, plaintiff settled with Farley in October, 1981. Farley paid plaintiff $90,000 in exchange for plaintiff's execution of a Joint Tortfeasor Release. The school district did not settle. Trial commenced on December 3, 1982.

Shortly before the trial began, counsel for Farley asked that he and his client be excused from any further participation stating that because of the release their presence was unnecessary, and indeed a waste of their time. Counsel for Farley was advised by the court that his presence at counsel table was required, and that neither he nor his client would be excused. Despite that admonition, the plea to be released was pressed several times more in the succeeding days of the trial, culminating in counsel finally being told not to repeat the request. Nevertheless, toward the end, after Farley had testified, the court finally relented and released him but required his counsel to stay until the end. Although his attorney sat at the counsel table throughout the trial, Farley, apparently at the direction of counsel, sat in the back of the courtroom with the spectators.

The jury returned verdicts for plaintiff in the amount of $150,000 on the wrongful death claim and $1,819 in the survival action; finding Farley 35 percent and the school district 65 percent negligent. Farley, who so long claimed no interest because of his joint tortfeasor release, suddenly became very interested; the verdicts suggesting that he had paid much more in settlement than he would have had to pay if he had not settled. He filed a motion to mold the verdict and included a cross-claim against the school district seeking an order directing it to pay

plaintiff the difference between the $90,000 he paid in settlement and the sum of the verdicts. He argued that the balance (that is the excess of the settlement figure over the 35 percent) be paid back to him. We granted the motion to mold the verdict but denied his claim for a payback of the overpayment of $43,863.35. That figure is 35 percent of $131,819,[2] or $46,136.65 subtracted from the amount paid in settlement ($90,000).

In apparent recognition of its obligation to pay its full liability under the verdicts, the school district paid a total of $112,655.15;[3] $68,791.80 to the plaintiff and $43,863.35 to the prothonotary. Farley's crossclaim for contribution was denied by order dated July 14, 1983 thereby awarding the money to plaintiff.[4] Thus, the dispute is now between plaintiff and Farley over the $43,863.35.

The issue presented, one of first impression, is whether the Comparative Negligence Act of April 28, 1978, P.L. 202, 42 Pa.C.S. §7102, has impliedly repealed that provision of section 8326 of the Uniform Contribution Among Tortfeasors Act (Tortfeasors),[5] which limits a plaintiff's recovery to

2. This is the sum of the verdicts reduced by $20,000 the effective deductible under the No-fault Act. 40 P.S. §1009.101, et seq.

3. This figure is arrived at by the following calculation: 65 percent of $1,819 under the Wrongful Death Act, or $1,182.35 plus $372.20 assessed delay damages, plus 65 percent of $130,000 under the Survival Act or $84,500, plus $26,600.60 delay damages.

4. By order dated July 14, 1983 the sum in dispute of $43,863.35 was deposited in an interest bearing money market account by the prothonotary.

5. Act of July 9, 1976, P.L. 586, 42 Pa. C.S. §8321 et seq., a substantial reenactment of Act of July 19, 1951, P.L. 1130. By reason of the Judiciary Act Repealer Act both acts were effective July 27, 1978.

the verdict amount. If liability is apportioned in accordance with the Comparative Negligence Act is plaintiff entitled to the full percentage share of adjudged liability from a non-settling defendant notwithstanding a previous settlement with a second defendant?

Section 8326 of the Tortfeasors Act states:

"A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid."

Upon entering into a settlement agreement with a tortfeasor and executing a joint tortfeasor release a plaintiff's claim is reduced by the amount of consideration paid for the release or by the proportion by which the release provides that the total claim shall be reduced, whichever is greater, if the Tortfeasors Act is unaffected by the Comparative Negligence Act.

In Daugherty v. Hershberger, 386 Pa. 367, 126 A.2d 730 (1956) plaintiffs instituted actions, consolidated for trial, against defendant Hershberger, for personal injuries suffered as a result of an automobile collision with Hershberger and Mong, driver of a third automobile. Before starting the actions against Hershberger, plaintiffs settled with Mong for a total of $13,500. The releases provided that damages against all other tortfeasors (there was only one, Hershberger) were reduced to the extent of his pro rata share (or 50 percent) in this pre-comparative negligence action). Hershberger joined

Mong as an additional defendant and the verdicts against both totaled $11,720.

Plaintiffs sought recovery of one-half of the verdict ($5,860.50) from Hershberger claiming that since the releases provided for a reduction of the damages recoverable against Mong only to the extent of 50 percent of the damages, they were entitled to this sum from Hershberger. The Supreme Court found otherwise stating the language of the Tortfeasors Act was unambiguous:

". . . if the proportion of reduction provided by the release is greater than the amount of consideration paid for the release, such proportion of reduction prevails, but if, on the other hand, the consideration paid for the release is greater than the proportion of reduction provided by the release, then the amount of the consideration paid for the release prevails."

Three of plaintiffs received more in settlement than the verdict awarded them, and four of the plaintiffs received less. Hershberger was obliged to pay only the latter and in an amount which totaled $1,839.26. In a follow-up action, Mong, Appellant v. Hershberger, 200 Pa. Super. 68, 186 A.2d 427 (1962), Mong sought contribution from Hershberger for the difference between the amount Hershberger paid to plaintiffs ($1,839.26) and his pro rata share of liability ($5,860.50) or $4,021.23. The Superior Court recognizing it would be inequitable to give Hershberger the benefit of Mong's pretrial settlement, found for Mong, but in so doing took the benefit of the earlier bargain from the Daughertys.

This result appears to be compelled by the language of the Tortfeasors Act, however much it discourages settlements and reverses the benefits of a contract freely negotiated by a plaintiff and a settling defendant. A cautious plaintiff not compelled

by need to settle will try the case against all defendants rather than release one, for if he settles he loses regardless of the outcome of the trial.

A simplified example of what occurred here illustrates the point; plaintiff's verdict was $150,000 v. both defendants. 65 percent of that sum is $97,500. If he retains the benefit of his bargain with Farley his total recovery would be that sum plus the settlement amount of $90,000 or $187,500. By the Daugherty result he loses $37,500 of his bargain; the benefit is reversed. On the other hand, if the verdict here had been greater, say $200,000, plaintiff would lose also because the school district would pay the same $97,500 and the total recovery would again be $187,500. If he can get less but never more, there is no benefit in settling.

Ironically, the Tortfeasors Act was intended to encourage settlements. "The policy of the Act is to encourage rather than discourage settlements." Unif. Contribution Among Tortfeasors Act, §1(d) Commissioners' Comment (1955 Revision) 12 U.L.A. 65 (Master Ed. 1975). The Daugherty result, while an improvement over the pre-Tortfeasors Act result which released all defendants regardless of the agreement between plaintiff and the settling defendant, is much less conducive to settlements than a change which allows a plaintiff to retain the full benefit of his bargain. It is urged in defense of Daugherty that plaintiff cannot and indeed should not get more than the amount of his verdict. But why not, unless statutory law compels such a result? If he can get less, why not more, especially since his bargain before trial gave him more.

There is no way of knowing, of course, but it is reasonable to suspect that numerous plaintiffs have refused settlements in the 28 years since Daugherty

came down. Again, why settle if the case must be tried anyway, with recovery limited to the verdict and with a good chance that less than the verdict will be recovered. The encouragement to plaintiffs is clear, but would defendants be discouraged from settling by a change? I think not. No joint tortfeasor settles before trial with the expectation of a return of money later. Just as here, he settles to be out of the case.

Would a change encourage a remaining defendant to join in? I think so. No longer is his pro rata liability set by the number of joint tortfeasors. Now it is by percentage of negligence in a trial where he will be the focus of plaintiffs' attack, whether he is the more culpable defendant or not.

If the Comparative Negligence Act is not interpreted so as to work a change, its effect will be to further discourage settlements. For example, in a case involving two joint tortfeasors, if plaintiff settles with one (later found to be ten percent negligent) for $90,000 and is awarded $100,000 at trial against both, under the Tortfeasors Act before comparative negligence defendant would be required to pay plaintiff the $10,000 difference and then make contribution to the settling defendant of $40,000. Unless the Comparative Negligence Act makes a change, under the same facts, the nonsettling defendant would have to pay plaintiff $10,000 and then pay the settling defendant $80,000. The total received by plaintiff would be $100,000 of which only $10,000 is paid by the settling defendant who previously agreed to pay and did pay $90,000.

The result is even more bizarre if either of two extremes is the result at trial. If, for example, in this case plaintiff had succeeded in casting all the blame on the school district, Farley would have had no right to recover any of the money paid by him to

plaintiff before trial; he would not have been a joint tortfeasor. The result would be the same if the opposite were to occur and the jury found him 100 percent liable and the verdict was but $50,000, for example. Again he could recover none of his settlement overpayment from plaintiff. Why in logic then should he be entitled to recover part of his settlement payout when he falls in between those extremes and is found partially at fault?

The prospect of this topsy-turvy result is by no means remote. After the settlement, the nonsettling defendant will be the target of plaintiff's attack at trial. The settlement distorts the trial. A distortion which may, since he is no longer the focus of plaintiff's attention, result in a settling defendant being found less negligent at trial even though in fact he is the more culpable of the defendants. Such distortion will occur whenever a joint tortfeasor release has settled the liability of one defendant. It is an adverse effect we must expect if there is a settlement before trial with less than all defendants. This trial is a very good example of such distortion. It seems unlikely that Farley, the actively negligent party in this accident, would have been found less culpable than the school district, if plaintiff's attack had been against him as well as the school district. Plaintiff's evidence on the issue of negligence was directed almost entirely toward convincing the jury that the school district had been negligent in the placement of the bus stop. Farley, instead of being the central figure, was a mere sidelight as the case was tried, a circumstance which bears directly on his percentage of adjudged liability and therefore on the money in dispute.

On April 28, 1978, the Comparative Negligence Act (42 Pa. C.S. §7101 et seq.) was passed:

§7102.   Comparative negligence

"(a) General rule. In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

(b) Recovery against joint defendant; contribution. Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution."

Under this act each defendant is liable for the amount his percentage of negligence bears to the damages awarded. It affected a fundamental change in the determination of liability and contains no limitations of total recovery to the verdict amount, unlike the Tortfeasors Act. The right of contribution arises only when a defendant has been compelled after trial to pay more than his percentage share. It contemplates no settlement but only contribution when a financially irresponsible or recalcitrant defendant forces another defendant to pay more than his share. When that happens, the latter has an action for contribution.

Farley was not compelled to pay anything. His payment was made voluntarily in a freely negotiated settlement. He should now be compelled to abide by his agreement. He bought his peace for $90,000, an amount below his insurance limits. The settlement assured him of no further exposure, no matter how large the verdict. He was effectively out of the case as he asserted throughout the trial. The settlement also eliminated his exposure to the delay damages which were assessed against the school district. As stated earlier, the release also worked to focus plaintiff's attention on the school district. Certainly the result would not have been only 35 percent negligence on the part of Farley if plaintiff's attack had been evenhanded as one would expect without the release.

In entering into the settlement agreement both parties assumed risks. Plaintiff gambled that the jury would not return a verdict against Farley for a percentage of liability exceeding $90,000. Farley gambled that his share of liability would not amount to less than $90,000. Allowing him to recover the $43,863.35 has the effect of shifting the benefit of the bargain from plaintiff to him, so that he, who in retrospect made a bad bargain, and plaintiff, who in retrospect made a good bargain, have the results of the bargain reversed by judicial fiat; an inequity made worse when one considers that plaintiff's efforts at trial were the single most important factor in reducing his percentage of liability. Certainly the legislature could not have intended that Alice-In-Wonderland result.