MID-CONTINENT NEWS COMPANY, INC., et al., Appellants,

v.

FORD MOTOR COMPANY, et al., Respondents.

No. WD 34418.

Missouri Court of Appeals, Western District.

April 17, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 29, 1984.

Application to Transfer Denied July 17, 1984.

James E. Cooling and Kelley D. Sears, Kansas City, for appellant; Happy, Cooling & Herbers, Kansas City, of counsel.

John M. Kilroy, Sr., and James W. McManus, Kansas City, for respondent, Ford Motor Co.; Shughart, Thomson & Kilroy, Kansas City, of counsel.

Arthur Popham, Jr., Kansas City, for Boyertown Auto Body Works, Inc.; Popham, Conway, Sweeny, Fremond & Bundschu, Kansas City, of counsel.

Joseph B. Bott, Kansas City, for respondent Sherrill Minter, Inc.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

PRITCHARD, Presiding Judge.

Appellants herein, seeking contribution or indemnity from alleged joint tort-feasors, settled with its plaintiffs in federal court, Anna Kilbreth and her spouse, for $953,207.40, for serious injuries occasioned to Anna when Mid-Continent's van went off Highway 71 at about Red Bridge Road in Kansas City, and struck Anna with its rear view mirror while she was engaged in fixing a flat tire on the shoulder.

The appellants here who were originally sued by the Kilbreths are Mid-Continent News Company, Inc.; ARA Services, Inc.; and Russell Harris (who was the driver of the van). These parties notified each of the respondents, Ford Motor Company; Sherrill Minter, Inc.; and Boyertown Autobody Works, Inc., on October 10, 1978, of the pendency of the Kilbreth action and demanded and tendered defense thereof to them, but respondents refused to assume that defense.

While the Kilbreth action was pending in federal court *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978), was decided, holding that there is a right of indemnity or contribution among joint tort-feasors based upon their relative fault. Appellants thereupon requested of the federal court leave to file their third party complaints against respondents, but that request was denied upon the ground that appellants could pursue their third party claims after completion of the federal court action.

After the case was settled in federal court appellants filed their "Petition For Allocation of Fault" in the Circuit Court of Jackson County, Missouri, apparently more than three years prior to the trial court's entry of summary judgment against plaintiffs on October 21, 1982. [The exact date

of filing of the petition is illegible, as is the usual case, from the photocopies in the legal file.] That petition alleges various grounds among the respondents for allocation of fault upon theories of strict liability in tort for furnishing a defective van to appellants, and in affixing a rear-view mirror thereon which was alleged to have struck the settling plaintiff in the head. It is unnecessary to go into these extensive allegations in view of the disposition of this appeal.

In pertinent part, paragraph 5 of the first petition alleged that appellants had settled with the Kilbreths, but "have at all times denied any and all liability to the said Anna M. Kilbreth and Larry Kilbreth." Paragraph 6 of that petition is: "By mutual execution of a Contract for Settlement, plaintiffs herein and Anna M. and Larry Kilbreth on November 17, 1978 (plaintiffs not admitting liability on the Kilbreths' Petition), settled and compromised" [their] suit for $950,000 plus $3,207.40 costs, which settlement was the result of good faith arms-length negotiations. [The copy of the settlement contract attached recites that the Kilbreths accepted the payment in "complete settlement and satisfaction of all of the Plaintiffs' claims whatsoever against Defendants, which Plaintiffs, or either of them, have or could have against Defendants, their respective agents, servants, heirs, assigns, attorneys, and any and all other persons who might have liability derivative from any present Defendant." The contract goes on to recite that defendants deny any and all liability to the Kilbreths.] Paragraph 20 of the first petition alleges that any damage sustained by the Kilbreths was the direct and proximate result of the fault of defendants. Paragraph 21 of that petition is: "Should plaintiffs, or any of them, be found by the jury to have been at fault (which plaintiffs specifically deny), then any fault found on the part of plaintiffs, or any of them, is relatively disproportionate to that greater degree of fault on the part of defendants, and each of them." The foregoing allegations were incorporated by reference in each further count of the petition for allocation of fault.

Appellants then on about September 30, 1982, moved for leave to file a first amended petition, and attached a copy of that proposed petition. It had the same allegations as those referred to above as contained in the original petition. No leave was ever secured to file the first amended petition, and it was not filed.

On October 1, 1982, Ford Motor Company filed its motion for summary judgment, alleging as here pertinent, "2. Plaintiffs have failed to plead in this purported indemnity action that they too, are liable, contrary to the law of Missouri.", and "5. The alleged injured persons have signed complete and full Releases that release Ford from any liability in this matter. See Exhibits 'C' and 'D', the Compromise Settlement and Releases in Full, which are incorporated by reference." The other respondents also filed motions for summary judgment in which Ford's allegations in its motion were adopted.

On October 21, 1982, the trial court sustained the motions for summary judgment upon two grounds: (1) That the Kilbreths gave plaintiffs (appellants here) and Russell Harris (the driver of the van) a general release without reserving their claims against any other joint tort-feasors. "As a result, the Kilbreths fully released Ford, Boyertown and Sherrill Minter from all liability. *Rogers v. Piper,* 543 S.W.2d 261.", and (2) That "The main thrust of plaintiffs' suit seems to be for allocation of fault among themselves and their joint tort-feasors. A prerequisite to recovery on such a theory, however, is an allegation of plaintiffs' own liability. *Stephenson v. McClure, et al.,* 606 S.W.2d 208. The plaintiffs herein have not only failed to allege their own liability but in paragraph 21 of Count I on page 6 of the existing petition have denied that they were at fault in the collision which caused severe injury to Anna Kilbreth, a denial repeated in paragraph 20 of Count I of the Proposed Amended Petition; therefore, plaintiffs' action fails."

■ Although as to the first ground, the release, under *Rogers v. Piper*, 543 S.W.2d 261 (Mo.App.1976), would bar the Kilbreths from recovery against the present respondents as joint or concurrent tort-feasors, if there were other proper allegations, the release, standing alone, would not bar appellant from seeking contribution from respondents. Although respondents say it was dicta, there was an *express holding* to that effect in *Stephenson v. McClure*, 606 S.W.2d 208, 213[4] (Mo.App.1980), so there must have been presented that issue in the case where, as here, there was given a general release by the guardian of the settling plaintiff, which purported to release all her claims, including that of the joint tort-feasor, Fred T. Killian, deceased. The rationale of the rule that the giving of a general release of all claims by the settling plaintiff does not affect the right of indemnity or contribution among joint tort-feasors rests upon the concept that the settling plaintiff has received full satisfaction of all his claims in tort, which are different causes of action than the plaintiff who seeks indemnity or contribution from his joint or concurrent tort-feasors by way of an adjudication of their relative faults for the injuries to the settling plaintiff. The latter cause of action was, of course, newly created in this state by the case of *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978). The concept of there being separate causes of action in this circumstance finds support in these cases and authority: *Brockman Mobile Home Sales v. Lee*, 98 Idaho 530, 567 P.2d 1281 (1977), where the contribution statute required the extinguishment of liability of a joint tort-feasor to the injured person by the settlement before contribution could be had by the settling joint tort-feasor, the holding being that since the release specifically released the joint tort-feasor, Brockman could proceed by way of contribution under the statute; *Federated Mut. Ins. Co. v. Gray*, 475 F.Supp. 679 (E.D.Mo.1979), where the injured plaintiff and his parents executed releases in settlement to Tri-County (the defendant electric co-op) purporting to release it " 'and all

other persons, firms, or corporations liable or who might be claimed to be liable'." Tri-County then assigned all of its claims to its insurer, who sought "indemnity" from Gray. The court noted that *Whitehead & Kales*, supra, created a new substantive cause of action where there previously was none, and the right of contribution was not affected by the settlement (with a general release). Note the comments, 44 Mo.L. Rev. 680, 715 (1979); 46 Mo.L.Rev. 886 (1981). It is obvious from the cases noted in these articles, and further research (without noting the cases) that most states allowing contribution among joint tort-feasors where one has settled with the injured plaintiff, have set the ground rules by varied statutory enactments on the subject. Indeed, Missouri has done so by rewriting § 537.060 by amendment, L. 1983, p. ——. H.B. Nos. 135 & 194, § 1, providing for contribution, and further, "When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; * * *." The giving of the release here by the injured plaintiffs did not discharge respondents from the obligation for contribution to the settling co-tort-feasor.

Respondents rely upon *State ex rel. Stutz v. Campbell*, 602 S.W.2d 874 (Mo. App.1980), but that case is inapposite on its facts. There Stutz sued Tebbe for injuries sustained while Stutz was a passenger in the car of Kissing (his daughter) who was a proposed third party defendant. Stutz gave Kissing his covenant not to sue, and Tebbe, the proposed third party plaintiff, had given Kissing her general release. The case held merely that the giving of the general release by Tebbe, a co-tort-feasor, barred her right to contribution against a co-tort-feasor. Here, the appellants have given no such release, but have settled only their liability to the Kilbreths on their different cause of action for personal injuries.

■ The foregoing ruling, however, is not dispositive of this appeal. There remains the issue of whether appellants properly pleaded a cause of action for contribution or indemnity because of their failure to allege their liability to the settling plaintiffs so as to be joint tort-feasors with respondents. *Stephenson v. McClure*, supra, 606 S.W.2d at page 213[5], et seq., has ruled the question adversely to appellants on very similar facts. There an amended cross-claim for contribution of McClure alleged that respondent was negligent in the 11 respects asserted in the plaintiff's petition, and then charged that plaintiff's injuries were the direct and proximate result of the negligence of Fred T. Killian (respondent's decedent). It then concluded that appellant was entitled to contribution from respondent "for all or such part, portion or percentage of the amount paid to Kimberly Stephenson as corresponded to the part, portion or percentage of fault for the collision in question as the jury may determine to have resulted from an act or omission by Fred T. Killian." The court said, page 213[5], "While it may seem anomalous to require a pleader to assert his own liability, that element is fundamental to the doctrine of *Whitehead and Kales*. That doctrine is based upon the premise that the party seeking contribution is or was liable to the injured party. 'It should be borne in mind that the right to non-contractual indemnity presupposes actionable negligence of both parties toward a third party.' *Whitehead and Kales*, supra, 566 S.W.2d at 468. It is the well-recognized rule that one seeking contribution as a joint tortfeasor must allege that he was a joint tortfeasor." [Footnoting *Martinez v. Lankster*, 595 S.W.2d 316, 318 (Mo.App.1980).] The court could find no inference or reasonable intendment from the amended cross-claim that appellant (McClure) was liable to the injured party, and held that he had pleaded himself out of court by the allegation of negligence of Fred T. Killian. In this case, appellants not only pleaded themselves out of court by the allegation of respondents' fault being the direct and proximate cause of Kilbreths' damages (paragraph 20), but they have repeatedly, consistently and unequivocally denied their own liability to the Kilbreths.

Appellants argue that their petition pleads "some inference or reasonable intendment" that they were liable to the Kilbreths on these assertions: That the payment of $950,000 to the Kilbreths in settlement, as pleaded, alone must show that they believed that they might be, or were, liable to the Kilbreths, that they would not have paid almost a million dollars for any other reason. Appellants incorporated the Kilbreths' petition for damages in this action. Both petitions alleged that Harris, the driver of the panel truck, skidded, he lost control and the impact caused the Kilbreths' damages. On like allegations, and the fact of the pleaded settlement, the McClure court could find no inference or reasonable intendment of a pleaded liability. Nor does the fact that appellants sought indemnification or 100% contribution from respondents relieve them of properly pleading their own liability because it is the function of the trier of the facts to determine the relative percentage of fault among the parties.

■ Appellants' last point is that the court erred and abused its discretion in overruling their requests for leave to amend their petition sufficiently to plead their own liability to the Kilbreths. As noted, on October 1, 1982, Ford filed its motion for summary judgment, joined in by other respondents, specifically raising that ground. *Whitehead and Kales*, supra, had been final since June 15, 1978. *Stephenson v. McClure*, supra, had been published since November 12, 1980. Appellants could not but have known that Ford's ground for summary judgment had merit. It is true, however, that in their suggestions in opposition to Ford's motion, filed October 8, 1982, they stated that if the trial court believed that the petition was insufficient in that respect, they should be given leave to amend. There was no proposed amended petition attached to the suggestions which would cure the defect, but instead appellants waited until after the summary

judgments had been granted to proffer a second amended petition which did allege their status as joint tort-feasors, and leave to file it was denied.

In all these circumstances, it cannot be said that the trial court abused its discretion in denying leave to amend after judgment. Rule 55.33(a) provides that an amendment to a pleading may be made as of course within 20 days after a responsive pleading is served; otherwise only by leave of court, or upon written consent of the adverse party and leave shall be freely given when justice so requires. The "leave of court" when "justice so requires" is tempered by the facts, that the present matter of a proper pleading that appellants were joint tort-feasors with respondents could not, with diligence, be overlooked or unknown at the time the original petition was filed. See *Ackerman v. Roufa,* 584 S.W.2d 100, 103[9] (Mo.App.1979). A proper amendment here, if timely made and offered, would not have changed the original claim for contribution, but would have merely supplied a lapse in the statement, *Briggs v. Cohen,* 603 S.W.2d 20, 22[1, 2] (Mo.App.1980), but that amendment was never timely made or offered, and no adequate reason for that failure is here suggested. There is another reason supporting the trial court's denial of amendment. The legal file has a total of more than 600 pages. Two lengthy depositions, and one other of witnesses, are on file. Appellants have stated that they desire further discovery by way of out-of-date depositions, which the trial court deemed to be frivolous and which were apparently sought to be pursued as to meet other defenses of respondents. Since appellants have failed to state claims for relief in contribution, it would be a hardship on respondents to go through further discovery. See *DeArmon v. City of St. Louis,* 525 S.W.2d 795, 802[20, 21] (Mo.App.1975), which holds also that the permission to amend rests in the trial court's discretion, which will not be disturbed on appeal unless such discretion has been palpably and obviously abused. In its order sustaining the motions for summary judgment, the trial court further not-

ed: "In passing, we must note that if we were to grant plaintiffs leave at this late date to file the proposed amended petition and sustain the motion of Defendant Ford to add Albert Harris and possibly Royal Globe Insurance Company and the manufacturer of the Delbar mirrors as additional parties and further permit the taking of the deposition at Boyertown, Pennsylvania, the specially set trial date could not, as a practical matter, hold firm. It is five years since the date of the accident. It is four years since the date of the settlement in the Federal District Court. It is three years since the suit herein was filed. It is exactly ten months since this case was set for trial by agreement of the parties at a peremptory docket call. Justice and fairness requires that this court overrule all pending motions other than motions for summary judgment." (Dated October 21, 1982.)

The judgment is affirmed.

All concur.