Richard Eugene HAMPTON and Deloris
Lee Hampton, Plaintiffs-Respondents,

v.

SAFEWAY SANITATION SERVICES,
INC., Defendant-Appellant.

No. 51043.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Jan. 13, 1987.

Motion for Modification or Rehearing
Denied March 11, 1987.

Walter D. McQuie, Private Atty., Montgomery City, for defendant-appellant.

Timothy Michael Joyce, Private Atty., Warrenton, for plaintiffs-respondents.

SIMEONE, Senior Judge.

I

This is an appeal by the defendant-appellant, Safeway Sanitation Service, Inc., from a judgment entered on a jury verdict by the circuit court of Audrain County in favor of the plaintiffs for $6,000 representing that percentage of defendant-appellant's relative fault in an action for wrongful death brought by plaintiffs against the appellant and two other defendants as joint tortfeasors. For reasons hereinafter stated, we reverse and remand with directions.

This appeal involves the interpretation of a portion of the recently enacted contribution statute, § 537.060, RSMo Supp.1984.

The novel issue of first impression presented in this case is whether a non-settling tortfeasor which is found by the jury to be partially at fault, is relieved from liability when the verdict is less than the settlement between the plaintiffs and one of the settling tortfeasors. Or to put the matter another way—when the plaintiffs, before trial, settle with and release one of three defendant joint tortfeasors for an amount which exceeds the verdict, is the judgment against the non-settling tortfeasor satisfied so that the non-settling tortfeasor is relieved from liability to the plaintiffs regardless of its liability, if any, to the settling tortfeasor for contribution *inter sese.*

## II

On July 14, 1983, plaintiffs, a young married couple, Richard E. Hampton and his wife Deloris Lee Hampton brought an action for the wrongful death of their five year old daughter, Amy Lynn Hampton, who tragically died on May 10, 1982, against three defendants after a refuse bin or trash "Dempsey" dumpster located on uneven ground, fell over and struck her, while she was playing on and around it. The dumpster was manufactured by the defendant, Flint & Walling, Inc., and serviced by defendant-appellant, Safeway Sanitation Service, Inc., and defendant J & Z Disposal, Inc., as joint venturers. The plaintiffs theories of liability were: (1) strict liability in tort as to all three defendants and (2) negligently furnishing a dangerous instrumentality without adequate warning of the dangerous propensity of the dumpster as to defendants, Safeway Sanitation and J & Z Disposal Company. The petition prayed for actual and punitive damages.

Flint & Walling, subsequently answered and filed a "cross-claim" against the other two defendants for contribution.

On October 5, 1983, prior to the trial which began in October, 1985, plaintiffs settled with Flint & Walling, and the trial court entered an interlocutory order (1) finding that the plaintiffs are the surviving parents of Amy Lynn who died on May 10, 1982; (2) approving a separate settlement agreement by the plaintiffs with Flint & Walling for a consideration of $45,000 which preserved plaintiffs' rights against the other defendants; (3) ordering Flint & Walling to make payment of the settlement amount [1] to the plaintiffs; (4) ordering that at the conclusion of the trial, the issue of relative fault of Flint & Walling be submitted to the jury and judgment to be entered against them in accordance with the jury's finding of relative fault, and (5) ordering the plaintiffs to make partial satisfaction of a judgment for that portion of plaintiffs' total judgment found by the jury to be the percentage of relative fault attributable to Flint & Walling. In due time, after issues were joined, the cause proceeded to trial beginning on October 22, 1985, against all three defendants. Counsel for Flint & Walling took no active part in the trial.

At the beginning of the trial, counsel for plaintiffs moved that the settlement with Flint & Walling should not be made known to the jury, and counsel for Flint & Walling suggested to the court that he "simply [be] introduced" and "then take no further active part in the case." The judge said he "would leave it up to [him] as to what participation [he] wants to take in the trial." Counsel replied, "What I am asking for, Your Honor, is leave to be absent from the courthouse altogether."

The trial then proceeded. After announcing "ready," counsel for Flint & Walling was present but did not question witnesses or otherwise participate.

There is no need to detail the lengthy evidence in this three-day trial to resolve the issues presented, except to point out that the jury found in favor of the plaintiffs, and rendered verdicts in their favor. Following the jury verdicts, the court entered its judgment. In its judgment dated November 7, 1985, the trial court stated that (1) the jurors found the verdicts in favor of the plaintiffs against all three

---

1. The settlement took place prior to the adoption of § 537.060, RSMo Supp.1984. The statute is retroactive, *State ex rel. Simmerock v. Brackmann,* 714 S.W.2d 938, (Mo.App.1986).

defendants; (2) the jury assessed damages of plaintiffs at $30,000, and (3) the jurors found Safeway Sanitation to be 20% at fault, J & Z Disposal 20% at fault and Flint & Walling 60% at fault. The court thereupon entered judgment in favor of the plaintiffs against (1) Flint & Walling in the amount of $18,000 and ordered no further execution against said defendant, (2) Safeway Sanitation Service, Inc. in the amount of $6,000 and (3) J & Z Disposal, Inc. in the amount of $6,000.

In its post-trial motion, Safeway Sanitation moved the court for judgment notwithstanding the verdict for various reasons including that the verdict for $30,000 was satisfied by the $45,000 settlement made by Flint & Walling. The appellant contended that "The jury found that the total damages suffered by plaintiffs because of the misfeasance of all defendants was $30,000. A payment of $45,000 by one of the Defendants extinguishes the claim."

On January 3, 1986, the court denied the motion and Safeway Sanitation appealed.

### III

Section 537.060, RSMo Supp.1984 adopted by the legislature in 1983 provides as follows:

Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; *however such agreement shall reduce the claim by the stipulated amount of the agree-*

*ment, or in the amount of consideration paid, whichever is greater.* The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor.... (Emphasis added).

This statute, we believe, is part and parcel of the comprehensive, modern and changing scheme relating to the substantive law of torts designed to achieve a fair system of justice. Undoubtedly, our statute is based upon the philosophy and policy found in, and derived from the express language embodied in, the Uniform Contribution Among Tortfeasors Act adopted by the Commissioners on Uniform State Laws.

■ We believe that the plain meaning of the words of § 537.060, and the intent of the General Assembly requires us to conclude that when a settlement made by the plaintiffs with one alleged joint tortfeasor exceeds the verdict, the "claim" of the plaintiffs is "reduced" to zero or to a negative number so that a verdict rendered against the non-settling defendants is thereupon satisfied.

Since the policy decisions of *Missouri Pac. R. Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978) and *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), Missouri has joined the growing number of states which found it to be beneficial to ameliorate the harshness of the common law principles relative to contributory negligence and the absence of contribution among joint tortfeasors.

With the introduction of *Whitehead & Kales,* and its progeny and based upon the principle of "fairness," the harsh common law doctrines were changed to meet the demands of contemporary society. *See Whitehead & Kales, supra,* and Rawls, *A Theory of Justice.*

Under these new doctrines and principles, great changes took place.[2] First, Mis-

---

**2.** See the development of the doctrine of relative fault and the holdings in the various states in Comment, *Contribution—Relative Fault,* 53 A.L. R.3d 184 (1973); *Skinner v. Reed-Prentice Division, Etc.,* 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d

437, *cert. den.* 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978) and Ch. 70, sections 301–305, Ill.Stat.; See Note, 44 Mo.L.Rev. 691 (1979); Note, 49 Mo.L.Rev. 121 (1984); Note, 46 Mo.L.

souri adopted the doctrine "relative fault" or "apportionment of fault." Second, Missouri changed the common law rule and authorized "contribution" among joint tortfeasors. Third, a joint tortfeasor may now be responsible for his proportionate fault, either in an independent civil action or by a third-party claim against the other alleged tortfeasors in the same action. Fourth, *Whitehead & Kales*, left many questions unanswered—such as whether one of several joint tortfeasors could legitimately and finally effect a release so as to "buy his peace" with the plaintiff and be relieved from "contribution" to other non-settling tortfeasors.[3]

All these new Missouri principles were in conformity with the Uniform Contribution Among Tortfeasors Act adopted by the Commissioners on Uniform State Laws in 1955.[4] See 12 Uniform Laws Annotated 57 (1975). Two key provisions of the Uniform Act essentially adopted by the General Assembly relate to the issues in this cause.

> Section 1(d) of the Uniform Act provides:
> (d) a tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury ... is not extinguished by the settlement which is in excess of what was reasonable.

Section 4 of the Act relating to a release or covenant not to sue provides:

> When a release or a covenant not to sue or not to enforce judgment is given in

good faith to one of two or more persons liable in tort for the same injury ....:

> (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and,
> (b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.[5]

The Commissioners, in adopting these provisions believed that it was more important to encourage settlements than to make an attempt of doubtful effectiveness to prevent discrimination by plaintiffs or collusion in the suit. 12 U.L.A. at 100. "Accordingly," the Commissioners concluded, "The subsection [4(b)] provides that the release in good faith discharges the tortfeasor outright from all liability for contribution." *Id.*[6]

The response of the Missouri General Assembly to the effectiveness of a release, embodied in the Uniform Act was the adoption, in 1983, of § 537.060, RSMo Supp. 1984.

▮ The pertinent provision of that section[7] applicable to this case provides:

> When an agreement by release, covenant not to sue or not to enforce judgment is given in good faith to one of two or more

---

Rev. 886 (1981) and Reath, *Contribution,* 12 Harv.L.Rev. 1176 (1898).

**3.** See Milholland, *Settle by Covenant To Sue,* 35 J.Mo.Bar 168 (1978).

**4.** The 1939 Act was not received favorably by the States and a revised Act was adopted in 1955.

**5.** The Commissioner's Comments show that this section changed the 1939 provisions which released a settling tortfeasor from contribution only to the extent of the pro rata share of the released tortfeasor. The effect of the 1939 provision was to discourage settlements in joint tort cases, by making it impossible for one tortfeasor alone to take a release and close the file. The "pro rata share" could not be determined in advance. "No defendant wants to settle when he remains open to contribution in an uncertain

amount, to be determined on the basis of a judgment against another in a suit to which he will not be a party." 12 ULA at 99. Dean Prosser criticized the 1939 Act. *See W. Prosser, Torts,* 309 (4th ed. 1971).

**6.** For a complete discussion of the release of the settling tortfeasor from contribution (not indemnity) to other non-settling tortfeasors and the meaning of "good faith" see *Lowe v. Norfolk and Western Ry. Co.,* 124 Ill.App.3d 80, 79 Ill. Dec. 238, 463 N.E.2d 792 (1984).

**7.** *See* Fischer, *The New Settlement Statute: Its History and Effect,* Jan./Feb. 1984 J. of Mo.Bar 14 indicating that the statute was largely based on section 4 of the 1955 version of the Uniform Contribution Among Tortfeasors Act.

persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; *however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of the consideration paid, whichever is greater.*

It is now clear that under this statute that a settling tortfeasor is immune from any action or liability in contribution by the non-settling tortfeasor.

Recently, this court had occasion to determine the effect and validity of § 537.-060, in *State ex rel. Simmerock v. Brackmann*, 714 S.W.2d 938 (Mo.App.1986).[8] There, plaintiffs in a personal injury action released one of the alleged tortfeasors in a "Husband and Wife Release of One of Several Tort-Feasors" relying upon and embodying in their agreement § 537.060. The defendant who was not released had filed a cross-claim against the settling defendant. The settling defendant then filed a motion for summary judgment on the cross-claim, but the trial court denied the motion and set the cause for trial on the plaintiffs' claim against the non-settling defendants and on the cross-claim filed by the non-settling defendant. The settling defendant sought prohibition in this court and we made our provisional rule absolute. We held that under the terms of the statute that a release given by plaintiffs operates as a release from all liability for contribution or noncontractual indemnity.

While it is now clear that a settling tortfeasor is immune from contribution to the other tortfeasors,[9] the effect of such settlement which exceeds a verdict has not heretofore been determined. The Uniform Contribution Act, section 4 provides that unless the terms of a release provide, a release or settlement does not discharge any of the other tortfeasors from liability, but "it reduces the claim against the others to the amount stipulated by the release or covenant, or in the amount of the consideration paid for it, whichever is greater."

Section 537.060 is to the same effect. It states that a release of one does not discharge the others, unless the terms so provide, "however, such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of the consideration paid, whichever is greater."

The usual situation occurs when one defendant settles and a subsequent judgment is entered in favor of the plaintiff for an amount in excess of any settlement with the settling tortfeasor. In such situation, the court as a matter of law, will take into consideration the settlement and will credit any settlement on the damages assessed by the jury's verdict.[10]

■ In such situation, the amount of the plaintiffs' claim is reduced by the amount of the settlement or the consideration paid by the settling tortfeasor.[11] But, in the

**8.** Even prior to the adoption of § 537.060, it was held that a tortfeasor who settled with plaintiff was immune from liability for contribution to another tortfeasor. *Morris v. Rancourt*, 565 F.Supp. 64 (E.D.Mo.1983).

**9.** It is not necessary to decide whether the settling tortfeasor, having paid or settled for more than his proportionate share has a claim in contribution against the non-settling tortfeasor. *See Mid-Continent News Co., Inc. v. Ford Motor Co.*, 671 S.W.2d 796 (Mo.App.1984) and *Simmerock, supra*, 714 S.W.2d at 943. That issue is not present in the case at bar.

**10.** This procedure became effective in 1983. MAI 7.01 as originally drafted was withdrawn. *See* discussion MAI 3d, MAI 1.06, 7.01 and 7.02.

**11.** In *Gustafson v. Benda, supra*, the Supreme Court recognized the conflict between § 537.-060, prescribing the method of apportioning a judgment against multiple tortfeasors when one defendant has obtained a release and the Uniform Comparative Fault Act, § 6. Section 537.-060 is modeled after § 4 of the Uniform Contribution Among Tortfeasors Act of 1955, whereas § 6 of the Comparative Fault Act is more in line with the 1939 version of the Contribution Act. This Court had occasion in *Schiles v. Schaefer*, 710 S.W.2d 254, 277 (Mo.App.1986) to determine the proper mathematical apportionment of recovery by first deducting from the total damage, the plaintiff's percentage of fault, then from the remainder deducting the amount of a settlement, and from that remainder apportioning the percentage of fault to each tortfeasor. However, the Southern District recently decided *Jensen v. ARA Services, Inc.*, 719 S.W.2d 121 (Mo.App.1986) which held that the *Schiles* method of calculation was in error and adopted a different method of calculation. *Jensen* was transferred to the Supreme Court to resolve the

case at bar the unusual has occurred. The amount of the settlement ($45,000) with Flint & Walling, Inc., exceeded the jury verdict of $30,000. In its judgment the trial court noted that the verdict was against all three defendants and fault was apportioned at 60% to Flint & Walling, and 20% each to the other two non-settling defendants. The trial court entered judgment against the appellant-Safeway—for 20% of the $30,000 verdict—$6,000, and denied Safeway's motion for judgment n.o.v.

In such circumstances, the plain meaning of the words of § 537.060 must be applied. The statute mandates that the settlement "shall" "reduce" the "claim" by the amount of the settlement. A basic principle of statutory construction "is to ascertain the intent of the legislature and to give effect to that intent." In doing so the words used are considered in their "plain and ordinary meaning." *Springfield Park Central Hosp. v. Director of Revenue*, 643 S.W.2d 599, 600 (Mo.1983); *Bartley v. Sp. Sch. Dist. of St. Louis Cty.*, 649 S.W.2d 864 (Mo.1983); *State v. Burnau*, 642 S.W.2d 621, 622 (Mo. banc 1982).

"Reduce" (to lead back) means to diminish in size, amount, extent or number; to make small or to lower, bring down or to change the denomination of a quantity. *Webster's Third New International Dictionary* (1976).

■ A "claim", while often characterized as a "hydra-headed" legal term, has different meanings is different contexts in the law. But as used in § 537.060, we believe the word connotes the amount of damages as determined by an impartial fact finder—the jury.

Construing these words in their ordinary and plain meaning, it seems clear that the legislative intent is to have the "claim" "reduced" by the amount of the settlement.[12]

While few decisions have dealt with the precise issue involved here, and none in Missouri heretofore, our conclusion is buttressed by decisions in other states.

In *Martinez v. Lopez*, 300 Md. 91, 476 A.2d 197 (1984), the Court of Appeals of Maryland dealt with the issue. In that case, a minor and her parents sought damages for personal injuries allegedly resulting from medical malpractice. The plaintiffs brought suit against the physician and a hospital. On the morning of trial, the hospital, with court approval, settled with the plaintiffs for $725,000. the release provided that all claims recoverable by the plaintiffs against the physician "are hereby reduced to the extent of the statutory pro rata share of the hospital." Trial proceeded against the physician and the jury returned a verdict of $600,000. The physician moved for an order crediting the hospital's payment against the verdict, the effect of which would be to satisfy any judgment against him. The trial court, however, held that the physician remained liable so that a judgment of $300,000 was entered against him. The Maryland Court of Appeals reversed. "The issue is the effect which the release given by the Plaintiffs to [the hospital] has on any judgment entered against [the physician]." The court concluded that the plaintiffs' total claim was reduced by $725,000. "This exceeds the total claim as valued by the jury. Application of the reduction in this case produces a negative number. Consequently, the trial court should have granted [the physician's] motion for the entry of a credit satisfying judgment against him." 476 A.2d at 200.

---

difference. This court recently decided *Allen v. Perry*, 722 S.W.2d 98 (Mo.App.1986), reversing and remanding with directions to follow the proper method of calculation as finally decided by the Supreme Court. None of these decision control the issues here because no apportionment of contributory fault was attributed to the plaintiffs.

12. Prior to the new procedure of not informing the jury of the amount of the settlement, instruction MAI 7.01 (now withdrawn) informed the jury that in the event a settlement is equal to or *exceeds* the amount of plaintiff's damage, then *"your verdict must be for the defendant."* MAI–3d, Supp. This change related to procedure, not substance.

The Court reversed with directions to enter as satisfied the judgment against the physician.[13]

This Court recognized the validity of the "reduction" clause of § 537.060, in *Simmerock, supra.* In discussing the retroactivity of § 537.060, Judge Karohl, writing for the Court, concluded that no substantive right of the non-settling tortfeasor was affected and said:

> Plaintiffs in the underlying claim are not entitled to recover from any defendants remaining in the case any additional sum if a resulting judgment should occur in an amount less than the amount of the settlement.... 714 S.W.2d at 943.

We recognized in *Simmerock* the applicability of the reduction clause in § 537.060 as applicable to a negative number.

### IV

We hold, therefore, that the proper construction of § 537.060 compels the conclusion that when a plaintiff settles with one of two or more of the alleged joint tortfeasors and agrees to a covenant not to sue, and the settlement is in excess of a subsequent jury verdict finding the settling tortfeasor and the other nonsettling tortfeasors liable according to a percentage of their relative fault, the amount of the plaintiffs' "claim" must be "reduced" by the amount of the settlement. When such settlement exceeds the verdict, the the judgment against the non-settling tortfeasor is satisfied.

This conclusion, although to some, may seem to be a "windfall"[14] to the non-settling defendant, is supported by the express language of § 537.060; by the authorities in other jurisdictions; by the scheme established in the Uniform Contribution Among Tortfeasors Act; is consistent with the purposes and intent of § 537.-060; is recognized by the withdrawal of MAI 7.01; and is totally consistent with the common law general principle that a plaintiff is entitled to only one satisfaction for a "claim" for damages.

The judgment of the trial court is reversed and remanded with directions to enter judgment in favor of appellant.

DOWD, P.J., and CRIST, J., concurs.

---

**13.** *See also Ball Corporation v. George,* 27 Ariz.App. 540, 556 P.2d 1143, 1148 (1976); *Daugherty v. Hershberger,* 386 Pa. 367, 126 A.2d 730 (1956).

**14.** *See* Mussmanno, J. dissenting in *Daugherty v. Hershberger,* 386 Pa. 367, 126 A.2d 730, 735 (1956).