The STATE of Missouri, ex rel., Dr. Janardana SHARMA and Arms, Dodge, Robinson, Wilber and Crouch, Inc., Relators,

v.

The Honorable Robert A. MEYERS, Judge of the Circuit Court of Jackson County, Missouri, Respondent.

WD 43729.

Missouri Court of Appeals, Western District.

Dec. 11, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 1991.

Application to Transfer Denied March 5, 1991.

Norman I. Reichel, Jr., Kansas City, for relators.

Kevin E. Glynn, Kansas City, for respondent.

Before LOWENSTEIN, TURNAGE and BERREY, JJ.

LOWENSTEIN, Judge.

The issue presented in this action in prohibition is whether under § 537.060, RSMo 1986 a tort-feasor who has settled with the plaintiff, who despite not having been sued is subject to contribution by a joint tort-feasor against whom the plaintiff has obtained a judgment. Section 537.060, which became effective on September 28, 1983, reads as follows:

> Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury

or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. *The agreement shall discharge the tort feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor.* The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability. (Emphasis added).

In 1981 Debbe Goff filed a petition in negligence against defendants St. Luke's Hospital and Dr. Crouch arising out of her husband Gary's death. But Debbe did not sue either Dr. Sharma who had treated Gary or the medical group of doctors who formed a professional corporation (Dr's. Arms, Dodge, Robinson, Wilber and Crouch, Inc., referred to in this opinion as the "group") to which Crouch and Sharma belonged. Dr. Crouch admitted Gary to St. Luke's because of complications from an attempted kidney transplant. Dr. Sharma actually treated Gary, who suffered a dramatic drop in his red blood cell count and died. The plaintiff's suit against Crouch was based on the doctor's professional relationship with Sharma.

A jury verdict was returned in January 1986 for $2,000,000 against St. Luke's and Crouch. The judgment was affirmed as to St. Luke's but reversed and remanded as to Crouch. *Goff v. St. Luke's Hospital of Kansas City*, 753 S.W.2d 557 (Mo. banc 1988). Just after the Supreme Court opinion, Goff and St. Luke's settled on a guaranteed payout schedule. St. Luke's reserved its claims against Sharma and the group in the Goff release. Crouch then gave notice to Sharma and the professional medical group that he was still an active defendant subject to liability. In May of 1989, Crouch, Sharma and the group settled with Goff for a total of $100,000. This settlement reached the limits of a St. Paul policy that covered the two doctors and the medical group. Since this was a wrongful death case, under § 537.095.3 the circuit court was required to and did approve the settlement entered judgment for $100,000. As an aside it should be noted § 538.230 covers apportionment of fault against a health care provider, but this statute affects causes arising on or after February 3, 1986. Section 538.235.

The following month St. Luke's filed the underlying suit in the case at bar, an action against Sharma and the medical group "for contribution and/or indemnity pursuant to ... *Safeway Stores, Inc. v. City of Raytown,* 633 S.W.2d 727 (Mo. banc 1982)." In *Safeway,* the Supreme Court allowed a tortfeasor-defendant whom judgment had been entered against, to make a claim in a separate action against a joint tort-feasor the plaintiff had not chosen to sue. The respondent here refused to grant a judgment for Sharma and the group despite their reliance on the emphasized portion of the contribution statute.

This court issued a preliminary writ in favor of Sharma and the group, which is today made absolute, but also in the form of mandamus, since the relief sought was to compel the trial court to grant judgment to the relators because the effect of the settlement under § 537.060 was to end any efforts to obtain contribution.

An extraordinary remedy is appropriate on these facts. A discretionary writ in prohibition lies to stop a circuit court from proceeding on a claim asserted against a party where the claim is clearly barred and proceeding on the claim will produce useless and unwarranted litigation. *State ex rel. New Liberty Hospital District v. Pratt,* 687 S.W.2d 184, 187 (Mo. banc 1985); *State ex rel. Rope v. Borron,* 762 S.W.2d 427, 430 (Mo.App. 1988).

In a nutshell, the court has no qualms with the right of a joint tort-feasor like St. Luke's to pursue a suit in contribution against a "tort-feasor originally liable to the plaintiff-injured party," but who has

had judgment taken against it by the plaintiff. Such an action is clearly contemplated under *Safeway, supra*, at 730. What the court finds, as applicable to these facts, is a legislative intent in § 537.060 to foster a public policy to encourage settlements between tort-feasors and injured claimants—with the incentive being a settling tort-feasor can put the incident to rest and will not be subject to a later action for contribution.

The principle of "contribution" is that a tort-feasor against whom a judgment is rendered is entitled to recover proportional shares of the judgment from other joint tort-feasors whose conduct contributed to the injury and who were also liable to the plaintiff.

*U.S. v. Conservation*, 619 F.Supp. 162, 224 (W.D.Mo.1985). As stated earlier, a tort-feasor may be liable for contribution even though "no action has been brought against him by the injured plaintiff." *Id.* at 225. *Hampton v. Safeway Sanitation Services, Inc.*, 725 S.W.2d 605 (Mo.App. 1987), interpreted § 537.060 in the context of "whether a non-settling tort-feasor which is found by the jury to be partially at fault, is relieved from liability when the verdict is less than the settlement between the plaintiffs and one of the settling tort-feasors." *Id.* at 606. In *Hampton*, one tort-feasor settled for more than the jury brought in as total damages against all the remaining tort-feasors. The court in holding the non-settling tort-feasor's obligation satisfied, stated at page 609:

> It is now clear that under this statute that a settling tort-feasor is immune from any action or liability in contribution by the non-settling tort-feasor.

In *Lowe v. Norfolk and Western Ry. Co.*, 753 S.W.2d 891 (Mo. banc 1988), our Supreme Court examined the statute saying § 537.060, "permits alleged tort-feasors to buy their peace by good faith settlement with the claimant" (footnote omitted). It should be noted the "good faith" language comes from the sentence in the legislation immediately preceding the earlier highlighted sentence, and refers as applicable here, to a release, "given in good faith to one of two or more persons liable ..." The majority in *Lowe*, wrote the following

with regard to the public policy embodied in the portion of the statute now in question.

> The policy of the law is to encourage settlements. A defendant settles to obtain peace and repose. If these are not available, there will be no settlement.

> \* \* \* \* \* \*

> Settlements are surely impeded if any one defendant may effectively prevent others from settling.

> \* \* \* \* \* \*

> The advantages of promoting settlement outweigh the possible disadvantage to those who settle late, or who do not settle at all and stand trial.

753 S.W.2d 894–895.

The respondent here argues a "lack of good faith" in adding the relators' names to the Goff settlement with Crouch. The argument basically stresses the unfairness in that St. Luke's never had notice of the relator's settlement hearing with Goff in question, plus the settlement amount was too low, and any Goff claim against Sharma or the group had by the time of settlement been barred by the statute of limitations. St. Luke's argues it is unfair to use the statutory language to release both Crouch and the relators for a total of $100,000, and bar contribution because relators concocted the settlement, avoiding exposure to Goff contribution to the St. Luke's judgment.

This court reads the "good faith" language of § 537.060 refers to the good faith of Goff in entering into a settlement with Sharma and the group, and not to any resulting impairment of the future contribution rights of the joint tort-feasors to St. Luke's. Here the undisputed facts are that the claimant chose to release three tort-feasors for the limits of the insurance policy. A judge approved this wrongful death settlement and entered judgment. The clear import of this statutory section, as interpreted by court decision, is to encourage settlements and to see that claimants receive quick and adequate recompense. Goff voluntarily settled for policy limits

and the matter was approved by a court, guarding against collusion or lack of good faith on the part of Goff.

Both sides here cite to the Eastern District's opinion in *State ex rel. Simmerock v. Brackmann,* 714 S.W.2d 938 (Mo.App. 1986), where a plaintiff settled with the co-defendant driver, against whom the remaining defendant sought contribution. The court said at page 941:

We find that under the clear terms of this statute the release given to relator Simmerock by plaintiffs Fenlon operates to release relator from all liability for contribution or noncontractual indemnity to codefendant Battocletti. Thus, as a matter of law, relator was entitled to summary judgment on the cross-claim and the trial court will exceed its jurisdiction in permitting further proceedings against relator in the underlying lawsuit.

In *Simmerock,* as in this case, the trial court refused to grant summary judgment based on the § 537.060 to the settling tortfeasor, but the court noted the affidavits of the non-settling defendant were inadequate to make a contested issue of a good faith settlement. *Id.* at 943. It is unclear from the opinion whose "good faith" is to be examined, and this problem is as a result of the wording of the statute itself. To reiterate, this court does not interpret the statute to be a means of delving into the intent a joint tort-feasor who settles, even though the intent may be to avoid contribution. It is the good faith in which the release is given by the claimant which governs. The widow Goff was represented here by able counsel, and while under no compulsion, chose to release the relators for policy limits. This agreement was approved by a circuit judge. By making the writ absolute the policy of encouraging settlements between joint tort-feasors and claimants is furthered.

This is not to say, however, that such a result seems fair to a defendant in St. Luke's position. While there is a clear public policy to promote settlements and put an end to liability and litigation, the legislature *is strongly* urged to address a method to ameliorate the plight of such a

joint tort-feasor without circumventing the avowed purpose of § 537.060.

The preliminary writ is made absolute. The respondent is prohibited from proceeding further with the contribution suit, but is to enter judgment for relators which will bring finality to the matter.